UNION BANK OF RICHMOND, VA., v. BOARD OF COMMISSIONERS OF TOWN OF OXFORD.

*Railroad Aid Bonds—Election to Authorize Issue—Compromise Decree — Estoppel — Non-suit — Constitutional Law.*

1. Where, in a suit by a railroad company to compel the issuance by a town of bonds in aid of the railroad, a compromise decree was rendered whereby the town was released from liability for one-half of its subscription in consideration of its issuing the other half, the town is estopped from denying the validity of the bonds issued in pursuance of such decree, and such estoppel is as effectual in favor of the purchaser of the bonds in a suit to compel the payment of coupons as it would be if the action were brought by the railroad company.

2. Since the Statute (Section 574 of *The Code*) and, indeed, independent of it, where disputed claims have been preferred against a town, it may make a contract with the creditor whereby the latter agrees to discount or throw off a portion, and such an agreement is founded upon a sufficient consideration and will be enforced.

3. Where, in a suit by a railroad company against a town to compel the latter to issue bonds, a compromise decree was entered whereby the company was required to release the town from one-half of the issue upon the issuing by the town of the other half, the fact that such release has not been executed by the railroad (no demand for such release having been made) will not invalidate the bonds issued in pursuance of the decree and held by a *bona fide* purchaser.

4. While it is a prerequisite essential to the validity of bonds issued by a town in aid of a railroad that the Legislature shall grant the power to aid and that a majority of the qualified voters shall signify their approval, yet the machinery for ascertaining the will of the electors is a secondary consideration ; therefore,

5. Where an Act of the Legislature authorized the issue of bonds by a town in aid of a railroad, and provided for their payment by taxation but did not provide for an election on the question of their issuance, and the election was held in conformity to existing election laws relating to the borrowing of money by municipalities, the bonds issued pursuant to such election are valid in the hands of a *bona fide* owner.

6. An Act of the Legislature authorizing towns to issue bonds in aid of a railroad and providing for the mode of payment thereof, is not void under Sect. 7, Art 7, of the Constitution, because it does not provide for a special election to ascertain the will of the people, since the general laws relating to such elections are applicable.

7. The records of a municipality showing that a proposition to allow it to issue bonds authorized by the Legislature was submitted after 30 days' notice, and that a majority of the qualified registered electors signified their assent by their affirmative ballots, are conclusive evidence that the will of the majority was so expressed.

8. In an action by the holder of bonds of a town to compel the town to pay them, an answer merely denying the complaint and setting up as a counter-claim, non-user, failure to build and complete the road and other facts which might enable the State to have the charter declared forfeited, and praying that the bonds should be delivered up and cancelled, does not constitute such a counter-claim or demand for affirmative relief as will prevent the plaintiff from taking a non-suit upon the holding by the Judge that the bonds are void.

9. The *bona fide* purchaser of municipal bonds issued in aid of a railroad is required to look no further than to see whether those things essentially prerequisite to the issuing of a valid municipal bond have been done and cannot be made to suffer because the town did not take proper and effective measures to secure the completion of the road in whose aid the bonds were issued.

PETITION for Mandamus, heard before *Hoke, J.*, and a jury, at November Term, 1894, of GRANVILLE Superior Court.

The Court at the close of evidence and after argument, having intimated an opinion that on the evidence, if believed, plaintiff could not recover, and that he would charge the jury, if they believed the evidence, they should answer second issue "No."

That the bonds were issued without authority and plaintiff was affected with notice.

In deference to the opinion the plaintiffs submitted to a non-suit and appealed. Notice waived and appeal bond fixed at one hundred dollars.

The bond with the coupons sued upon are as follows:

"The Board of Commissioners of the Town of Oxford, for value received, is justly indebted to and promises to pay _____ or bearer, the sum of One Thousand Dollars, upon presentation of this bond at the office of the Treasurer of said Town of Oxford, Granville county, and State aforesaid, on the 1st day of August, 1922, with interest thereon at the rate of six per cent. per annum, to be paid semi-annually upon the 1st days of February and August in each and every year till the maturity of said Bond upon the surrender of and in accordance with the terms of the interest warrants or coupons hereto annexed.

"This Bond is issued in pursuance of the powers and the authority granted by the State of North Carolina as pro-

vided in Chapter 49 of *The Code* of North Carolina, and in pursuance of the authority granted by Section 30 of the Charter of said Town of Oxford, which is embraced in Chapter 21 of the Private laws of 1885, as passed by the General Assembly of said State, and in pursuance of the authority granted by Chapter 315 of laws of 1891, passed by the General Assembly of North Carolina and ratified the 5th day of March, 1891, entitled 'An Act to Incorporate the Oxford and Coast Line Railroad Company.'

"And in pursuance of an election held in said Town of Oxford, on the 27th day of April, 1891, and of a settlement and adjustment of a controversy and litigation in which the Oxford and Coast Line Railroad Company *et al* were plaintiffs and the Board of Commissioners of Oxford and Mayor of said Town were defendants, adopted by the said Board of Commissioners, July 25th, 1892, and the judgment and decree of His Honor, *H. G. Connor, Judge presiding*, in said action at July Term, 1892, of Granville Superior Court.

"This Bond may, at the option of the Board of Commissioners of Oxford, be redeemed at any time after the expiration of ten years from the date of said bonds upon the payment of the principal and interest due and Fifty Dollars additional upon each of the bonds so redeemed, due notice of the call therefor having first been given by publication for sixty days in some newspaper published in the City of New York, and in some newspaper published in the City of Baltimore, and in some newspaper published in the Town of Oxford, and after the expiration of the time mentioned in said notice all interest on said bond shall cease.

"In testimony whereof, the said Board of Commissioners of Oxford have caused this Bond to be signed by the Mayor of said Town, ex-officio chairman of said Board of Commissioners, and attested by the Clerk of said Board with the cor-

porate seal of said Town of Oxford, North Carolina, this 1st day of August, 1892.

GEORGE P. FLEMING,
Clerk and Secretary.

{ Corporation Seal }          A. A. HICKS,
{      of          }
{ Oxford, N. C.    } Mayor and Ex-Officio Chairman of
Board of Commissioners of Oxford.

(Interest coupons calling for semi-annual interest are attached.)

Dated August 1st, 1892.    Payable at the office of the Town Treasurer in Oxford, North Carolina.

(Signed) A. A. HICKS, Mayor.
(Signed) GEO. P. FLEMING, Clerk."

The following agreement was offered in evidence:

STATE OF NORTH CAROLINA, )
        GRANVILLE COUNTY.  )

This covenant and agreement made and entered into this the 25th day of July, 1892, by and between the Oxford & Coast Line Railroad Company, (chartered by an Act of the General Assembly of North Carolina, entitled "An Act to incorporate the Oxford & Coast Line Railroad Company," and ratified the 5th day of March, 1891) on the one part, and the Board of Commissioners of Oxford (a municipal Corporation also chartered by an Act of the General Assembly of North Carolina, entitled "An Act to repeal Chapter 215 of the laws of one thousand eight hundred and fifty-two, and to charter the Town of Oxford," and ratified the 16th day of February, 1885) on the other part.

*Witnesseth*, That whereas in the year 1891, the Board of Commissioners of Oxford, ordered an election to be held in the said Town of Oxford, on the 25th day of May, 1891, to decide upon the question as to whether the Town of Oxford should vote to issue Bonds to the amount of Forty

Thousand Dollars, to subscribe to the Capital stock of the Oxford & Coast Line Railroad Company, the money so received to be used in building that portion of the said road in Granville County, and afterwards the said Board of Commissioners changed the day of holding said election to the 27th day of April, 1891, by another order, with the direction that those who favored said proposition should vote a ballot with the word "Approved" thereon and those opposed should vote a ballot with the words "Not approved" thereon. And whereas said election was accordingly held in said Town, and a majority of the qualified voters of the said Town, voted ballots having the word "Approved" thereon, and whereas the Oxford & Coast Line Railroad Company, under a contract with James T. Pruden, proceeded to construct a railroad from said Town of Oxford to a point in said County of Granville, on the Durham & Northern Railroad, at Jack Dickerson's, in said County, and after having done considerable work in the grading of the same, demanded that the Board of Commissioners of Oxford should issue Bonds to the amount of Forty Thousand Dollars as aforesaid, as a subscription by the said Board of Commissioners to the Capital stock of said Oxford & Coast Line Railroad Company, which said Board of Commissioners refused to do; and whereas a controversy has arisen thereupon, between the parties to these presents, the party of the first part claiming and insisting that it has the right to have such Bonds as aforesaid issued as a subscription by the party of the second part to the Capital stock of the said Oxford & Coast Line Railroad Company, and to compel the issue of the same, and the said party of the second part, claiming and insisting to the contrary, and that said party of the first part has no right to require or compel said party of the second part to become a subscriber at all to the Capital stock of said Oxford & Coast

Line Railroad Company, or to issue any Bond or Bonds as a subscription to the same, and whereas there may be reasonable doubt as to whether said party of the first part has such right as claimed by it as aforesaid, and whether said party of the second part is justified in its refusal as aforesaid, and whereas two suits have been brought to the Superior Court in the said County of Granville, by the said Oxford & Coast Line Railroad Company and James T. Pruden, against the Board of Commissioners of Oxford, A. A. Hicks, Mayor of the Town of Oxford, being applications for Mandamus, and whereas upon a conference between the parties to these presents, it has been concluded by and between them, that it is best for the interests of both parties to compromise and settle said controversy in manner and upon the terms hereinafter set forth:

Now therefore, it is covenanted and agreed by and between the said parties to these presents as follows, to-wit:

I. That the said party of the second part, instead of subscribing anything to the capital stock of said Oxford & Coast Line Railroad Company, or issuing Bonds to the amount of Forty thousand Dollars as a subscription to the same, shall for the purpose only of a compromise and settlement of this controversy, issue to the said party of the first part, Bonds to the amount of Twenty Thousand Dollars, the said Bonds or their proceeds to be used exclusively and applied in aid in the first place of the payment and satisfaction of the present indebtedness, contracts and liabilities of the said party of the first part, of every description, and in the second place, if more than sufficient to complete such payment and satisfaction, then as to the excess, in aid of completing the construction of said Railroad which is now in course of construction by said party of first part, between the town of Oxford and a point on the said Dur-

ham & Northern Railroad as aforesaid, such Bonds to be each in the sum of $1,000.00 dated August 1, 1892, and due and payable on the first day of August, 1922, with coupons of interest attached at the rate of six per cent. per annum, and payable semi-annually, on the first day of February and the first day of August in each and every year, and both Bonds and Coupons to be payable upon presentation at the office of the Treasurer of said Town of Oxford, in said Town, and upon the surrender of the same, and said bonds to purport upon their face to be issued under and in pursuance of Chapter 315 of Laws of 1891, and Chapter 21 of the Private Laws of 1885, and the election held April 27, 1891 : And this agreement and settlement and the judgment and decree of the Superior Court for the said County of Granville, to be entered in the said suits as hereinafter is mentioned, and that said party of the second part shall after the expiration of ten years from the date of said Bonds have the privilege of redeeming all or any of said Bonds before maturity upon paying the principal and interest due and fifty dollars additional upon every one of said Bonds so redeemed.

II. Co-temporarily with the issue and delivery of the said Bonds to the amount of Twenty Thousand Dollars as aforesaid, the said party of the first part shall and does covenant and agree to fully release, acquit and discharge the said party of the second part from all liability or obligation whatsoever to subscribe or pay anything whatever to the Capital Stock of said Oxford & Coast Line Railroad Company, or to issue for any purpose or on any ground or claim whatsoever any further .or other Bonds than the Twenty Thousand Dollars of Bonds so agreed to be issued as aforesaid, and also to guarantee and fully to protect said party of the second part from and against being called on at the demand of said party of the first part, or of any person or

persons, party or parties, whomsoever, or whatsoever, to subscribe anything to said Capital Stock, and from and against any liability or obligation to pay anything on account of any subscription or liability to subscribe to said Capital Stock. Said release, acquittance and discharge, guarantee and protection to be secured by instrument or instruments in writing properly drawn and executed in form sufficient for that purpose.

III. And the said party of the first part does further covenant and agree to and with the said party of the second part, that the said Bonds agreed to be issued as aforesaid or the proceeds of the same, shall be faithfully applied first to the payment and satisfaction of all existing debts, contracts and liabilities of the said party of the first part, of every kind and nature whatsoever, until the same are fully paid and satisfied, and secondly if the said Bonds or their proceeds should be more than sufficient to pay, satisfy and discharge in full the debts, contracts and liabilities of the said party of the first part as aforesaid, then the surplus of the same shall be faithfully applied in aid of the completion of said railroad, now in course of construction as aforesaid.

IV. And the said party of the first part doth further covenant and agree to and with the said party of the second part, that the said railroad now in course of construction from Oxford to a point on the Durham and Northern Railroad, at Jack Dickerson's, as aforesaid, shall be fully completed and put in operation within a reasonable time from, and after the issuing of said Bonds as aforesaid.

V. It is further agreed by and between the parties to these presents, that the said suits should be consolidated and that a judgment or decree shall be entered therein in accordance with the said compromise and agreement and that the said parties of the first part shall pay the cost of said suit.

BANK v. COMMISSIONERS.

VI. It is further agreed and understood by and between the parties to the presents that if the said James T. Pruden shall refuse or fail to consent and agree to the entry of such judgment or decree as aforesaid, then and in that case these presents shall be void and of no effect.

In testimony whereof the said Oxford and Coast Line Railroad Company has caused these presents to be signed by Wm. F. Beasley, President, and R. W. Lassiter, Secretary of said Company, and the common seal of said Company to be hereto affixed, and the said Board of Commissioners of Oxford has caused the presents to be signed by A. A. Hicks, Mayor of said town of Oxford, and G. P. Fleming, Secretary of said Board of Commissioners, and the corporate seal of the Board of Commissioners of Oxford to be hereto affixed this 25th day of July, 1892.

THE OXFORD AND COAST LINE RAILROAD COMPANY.

Oxford and Coast Line Railroad Company of North Carolina. Incorporated 1891.

By W. F. BEASLEY, President.

R. W. LASSITER, Secretary.

THE BOARD OF COMMISSIONERS OF OXFORD,

Corporation of Oxford, N. C. Seal.

By A. A. HICKS, Mayor.
And G. P. FLEMING, Clerk and Sec.

We, Wm. F. Beasley and James T. Pruden, concur in the foregoing agreement and agree to be bound by the same in all respects and to the same extent as if we were parties thereto. Our hands and seals this 25th day of July, 1892.

W. F. BEASLEY,    [Seal.]
J. T. PRUDEN,     [Seal.]

The following is the compromise judgment referred to in the opinion :

NORTH CAROLINA, �months In the Superior Court,
  GRANVILLE COUNTY.    July Term, 1892.

(14)

THE OXFORD AND COAST LINE
RAILROAD COMPANY AND JAMES } Plaintiffs
T. PRUDEN.

vs.                                                    } Judgment.

THE BOARD OF COMMISSIONERS
OF OXFORD, A. A. HICKS, MAYOR }    Deffs.
OF SAID TOWN OF OXFORD,

(15)
    Also
  The Same
    vs
  The Same.

### JUDGMENT.

On motion and by consent of the parties on both sides, it is ordered by the Court that the above mentioned actions, one returnable to the present term of the Court in term, and the other returnable before Hon. H. G. Connor, (the judge presiding and holding said Court) *at Chambers*, on the 25th day of July, 1892, be consolidated, and that the defendants be allowed to file one answer only to be considered and used as an answer in both said actions. And the defendants having filed their answer as aforesaid, and the parties having thereupon filed in Court in said action as consolidated as aforesaid an agreement between them in writing the same being a compromise and settlement of the matters in controversy in said actions between the parties upon the terms in said agreement set forth, one of which terms is that a judgment or decree shall be entered in said consolidated actions in accordance with said compromise and agreement. Now on motion of the parties on both sides the Court consenting thereto, and proceeding to render judgment in said consolidated actions,

in accordance with said agreement of compromise and settlement, doth adjudge and decree, order and direct, that the defendant the Board of Commissioners of Oxford, have prepared and issue at its own expense to the· plaintiff, the Oxford and Coast Line Railroad Company, bonds of said defendant to the amount of twenty thousand dollars, the said bonds or their proceeds to be used exclusively and applied in aid in the first place of the payment and satisfaction of the present indebtedness, contracts and liabilities of the said Oxford and Coast Line Railroad Company, of every description, and in the second place, if more than sufficient to complete such payment and satisfaction, then as to the excess in aid of completing the construction of the railroad now in course of construction by said Oxford and Coast Line Railroad Company, between said town of Oxford and a point on the Durham and Northern Railroad at Jack Dickerson's, in the county of Granville, and the said bonds to be each in the sum of One Thousand Dollars, dated August 1st, 1892, and due and payable the first day of August, 1922, with Coupons of interest attached at the rate of six per centum per annum, and payable, semiannually on the 1st day of February and the first day of August in each and every year until paid, and both bonds and coupons to be payable when due upon presentation at the office of the treasurer of the said Town of Oxford, in said town, and upon the surrender of the same, and the said bonds to purport upon their face, to be issued under and in pursuance of Chapter 315, of Laws of 1891, and Chapter 21, of the Private Laws of 1885, and the election held April 27th, 1891, and the agreement and settlement aforesaid and this judgment and decree and said bonds to contain a provision or stipulation that the Board of Commissioners of Oxford shall have the privilege of redeeming all or any of said bonds after the expiration of ten years

from the date of the same, and before their maturity at any time upon paying the principal and interest due, and fifty dollars additional upon every of said bonds so redeemed.

And the Court doth further adjudge and decree, order and direct, that co-temporarily with the issue and delivering to the said Oxford and Coast Line Railroad Company of the said bonds to the amount of twenty thousand dollars as aforesaid, the said Oxford and Coast Line Railroad Company at its own charge, deliver to the Board of Commissioners of Oxford, an instrument of writing with the corporate name of said company signed and its common seal affixed thereto and signed by its president and secretary by its direction and authority, fully releasing, acquitting and discharging the Board of Commissioners of Oxford from all liabilities and obligations whatsoever to subscribe or pay anything whatsoever to the capital stock of said Oxford and Coast Line Railroad Company, or to issue for any purpose or any ground or claim whatsoever any further or other bonds than the twenty thousand dollars of bonds aforesaid, and also fully guaranteeing and protecting said Board of Commissioners of Oxford, from and against being called on or required at the demand of the said Oxford and Coast Line Railroad Company, or any person or persons, party or parties whomsoever or whatsoever to subscribe anything to the capital stock of said Oxford and Coast Line Railroad, and from and against any liability or obligation to pay anything on account of any subscription or liability to subscribe to the capital stock of the same.

And the Court doth further adjudge and decree, order and direct, that the said Oxford and Coast Line Railroad Company apply the said bonds herein directed to be issued as aforesaid, or their proceeds, first to the payment and satisfaction of all existing debts, contracts, and liabilities of

said company of every kind and nature whatsoever, until the same are fully paid, satisfied and discharged, and secondly if the said bonds or their proceeds should be more than sufficient to pay, satisfy and discharge in full the said existing debts, contracts and liabilities of the said Company as aforesaid, then that the said company apply the surplus of said bonds or their proceeds in aid of the completion of the railroad now in course of construction as aforesaid. And the said Oxford and Coast Line Railroad Company, its officers and agents are hereby strictly prohibited and enjoined from using, disposing of or applying said bonds of twenty thousand dollars herein directed to be issued as aforesaid, or the proceeds of the same, or any part thereof, to or for any other use or purpose whatever, than is herein before mentioned.

And the Court doth further adjudge and decree, order and direct, that said Oxford and Coast Line Railroad Company, complete and put in operation or cause to be completed and put in operation, the said railroad now in course of construction from the said Town of Oxford, to a point on said Durham and Northern Railroad, at Jack Dickerson's, in Granville county, as aforesaid, within a reasonable time from and after the issuing of said bonds of twenty thousand dollars as aforesaid. And the Court doth further adjudge and decree, order and direct, that the plaintiff, the Oxford and Coast Line Railroad Company, pay the costs of said actions to be taxed by the Clerk of this Court. And in case any of the parties shall refuse or fail in anything to comply with this judgment or decree, or fully to do and perform all or any of the things herein required and directed to be done and performed by such parties, then the other parties or any of them interested therein shall be at liberty to apply to the Court.

H. G. CONNOR,
Judge Presiding.

STATE OF NORTH CAROLINA, }
       GRANVILLE COUNTY.   }

This indenture made and executed this 3d day of December, 1894, A. D., by and between the Oxford & Coast Line Railroad Company, Corporation, party of the first part, and the Board of Commissioners of Oxford Corporation, party of the second.

Witnesseth, That whereas the party of the second part did on August 15th, 1892, issue and deliver to the party of the first part in pursuance of a decree and judgment of the Superior Court of Granville County, at its July Term, 1892, and in accordance with the terms of a written agreement executed by the parties hereto on July 25th, 1892, twenty coupon bonds of the party of the second part in the denomination of One Thousand Dollars each, containing the recitals directed in said agreement and said judgment. Now therefore, the said party of the first part, for and in consideration of the receipt of said bonds, doth hereby fully release, acquit and discharge said party of the second part from all liabilities or obligations whatever to subscribe or pay anything whatever to the capital stock of said party of the first part, or to issue for any purpose, or any ground or claim whatsoever any further or other bonds than the Twenty Thousand Dollars of Bonds so agreed to be issued as aforesaid, and the party of the first part doth hereby guarantee and fully protect said party of the second part from and against being called on at the demand of the said party of the first part, or of any person or persons, party or parties to whomsoever or whatsoever to subscribe anything to said capital stock, and from and against any liability or obligation to pay anything on account of any subscription or liability to subscribe to said capital stock of the party of the first part.

116—23

BANK *v.* COMMISSIONERS.

The erasures in lines three and four of page 2 before, made before execution.

In the witness whereof the said, The Oxford & Coast Line Railroad Company, hath caused its corporate seal to be hereto affixed and hath caused its President and Secretary to sign their name hereto.

THE OXFORD AND COAST LINE RAILROAD CO.

( Seal of Oxford )                    By A. W. GRAHAM,
{ and Coast Line }                              President.
(     R. R. Co.      )

R. W. LASSITER, Secretary.

----

*Proceedings of the Board of Commissioners of the Town of Oxford, N. C., March 9, 1891.—Page 163.*

STATE OF NORTH CAROLINA, ) Mayor's Office,
          GRANVILLE COUNTY.  )     March 9, 1891.

At the regular meeting of the Board of Town Commissioners held this day there were present :    Messrs. L. G. Smith, Mayor ; L. R. Hunt, A. W. Graham, John Webb and R. T. Smith, Commissioners.

B. S. Royster presented to the Board a petition in word and figures following :

We, the undersigned citizens and tax payers in the Town of Oxford, solicitous for the welfare of the Town, and earnestly desirous to promote the same, respectfully petition the Board of Commissioners of the Town of Oxford to provide for an election in said Town, on the proposition to subscribe the sum of $40,000 to build a railroad from the town of Oxford to Springhope, or to some point on the A. C. L. R. R., or to some other R. R. system.

(Signed) B. S. ROYSTER and others.

Any action on said petition was postponed until after a meeting of the incorporators of the Oxford & Coast Line R. R. Co.

F. B. HAYS, Clerk.

---

*Proceedings of the Board of Commissioners of the Town of Oxford, N. C., March* 14, 1891.—*Page* 166.

STATE OF NORTH CAROLINA, } Mayor's office,
        TOWN OF OXFORD. }   March 14, 1891.

At a called meeting of the Board of Town Commissioners, held that day, there were present: Messrs. Louis G. Smith, Mayor; A. W. Graham, R. T. Smith, L. R. Hunt, John Webb, Commissioners.

After a discussion of the subject by various citizens, it was ordered:

That an election be held on the 25th day of May, 1891, to decide upon the question as to whether the Town of Oxford shall vote to issue bonds to the amount of Forty Thousand Dollars ($40,000), to subscribe to the capital stock of the Oxford & Coast Line R. R. Co., and that the money so raised be used in building that portion of the said road in Granville county.

F. B. HAYS, Clerk.

---

*Proceedings of the Board of Commissioners of the Town of Oxford, N. C., March* 24, 1891.—*Page* 168.

STATE OF NORTH CAROLINA, } Mayor's office,
        TOWN OF OXFORD. }   March 24, 1891.

At a called meeting of the Board of Town Commissioners, held this day, there were present: Messrs. Louis G.

Smith, Mayor ; A. W. Graham, R. T. Smith, John Webb, Commissioners.

Messrs. R. W. Lassiter, Jr., and J. G. Hall, a Special Committee from the Commonwealth Club, petitioned the Board to change the time for holding the election on the question of the Town subscribing Forty Thousand Dollars to the Capital. Stock of the Oxford and Coast Line Railroad, from the 25th day of May, to the 27th day of April next. It was so ordered.

At said election those who favor said proposition shall vote a ballot wth the word " Approved " thereon ; those opposed shall vote a ballot with the words "Not approved" thereon. The Mayor was requested to appoint a registrar and inspectors of election, both for the said Railroad election and for the regular annual municipal election, to be held the first Monday in May next, when a Mayor and seven Commissioners will be elected. Mr. Graham was appointed a committee to have printed and distributed among the electors of the Town, about one hundred hand bills, notifying them of the change in the date of the Railroad election. No further business offering, the Board adjourned.

C. B. LEACH,

Clerk *pro tem.*

*Proceedings of the Board of Commissioners of the Town of Oxford, N. C., April* 19, 1892.—*Pages* 246 *and* 247.

STATE OF NORTH CAROLINA,     }
             GRANVILLE COUNTY.  }

Entered on April 19, 1892.

Mayor's office, August 4, 1891.

At an adjourned meeting of the Town Commissioners held on August 4, 1891, in Mayor's office, there were

present: J. S. Brown, Mayor *pro tem.*; R. T. Smith, R. F. Knott, J. H. Bullock, Commissioners.

Ordered that the following paper be spread on Town Record, as follows:

Whereas, on the 27th day of April, 1891, it was ordered by the Board of Commissioners of the Town of Oxford, to submit to the qualified voters of the Town, the question of subscribing the sum of Forty Thousand Dollars to assist in building the Oxford and Coast Line Railroad.

And, whereas, at the election held on the 27th day of April, 1891, the said question was submitted to the voters of said Town, and out of a registered vote of_____:_____ it was found that 323 votes had been cast "Approved," and 15 votes had been cast "Not Approved," which was a clear majority of the qualified registered vote of said Town. And whereas the result of said election was duly declared in front of the Court House door in Oxford, on the 28th day of April, 1891, by W. H. White, Registrar, and the poll holders of said election, and was duly recorded on the (19th day of August, 1891) in the minutes of the Board of Commissioners. Now therefore be it resolved, that the bonds of the Town of Oxford, to the amount of Forty Thousand Dollars of the denomination of One Thousand Dollars each, payable on the 1st day of December, 1921, with interest not exceeding six per cent. per annum, payable on the 1st days of June and December each and every year until maturity, with the right to the Town after 10 years, upon 3 months notice in some newspaper published in the Town of Oxford and the Cities of Baltimore and New York, to redeem said bonds upon paying the sum of $1,050, and the accrued interest on each bond, be immediately and upon a completion of a contract by the authorities of the Oxford and Coast Line Railroad for the construction of the same. that the same be

delivered to the President of said Railroad Company to aid or assist in building said Railroad. And that whatever proportion of said Forty Thousand Dollars is used in building and equipping said road, shall be considered a subscription to the Capital Stock of said Railroad, and a certificate shall be issued to the Town of Oxford for stock to said amount.

The reason this part of the meeting held on the 4th of August, was not put on Town Records at proper time, it was lost and was not found until a few days before this. It was put on as soon as it was found.

G. P. FLEMING,
Clerk.

*Proceedings of the Board of Commissioners of the Town of Oxford, N. C., August* 3, 1892.—*Page* 290.

NORTH CAROLINA,          } Mayor's office,
    GRANVILLE COUNTY,          }         August 3, 1892.

At a called meeting of the Board of Commissioners held this day there were present: Messrs. A. A. Hicks, Mayor; J. M. Currin, W. L. Mitchell, C. D. Osborn, J. G. Hall, J. F. Edwards, Commissioners.

_____Ordered on motion of Mr. Edwards, that the receipt of the Oxford and Coast Line R. R. Co., be spread on Town Record. The receipt is as follows, to-wit:

Received August 15, 1892, of A. A. Hicks, Esq., Mayor of the Town of Oxford, North Carolina, twenty bonds of the denomination of One Thousand Dollars each, bearing interest at the rate of six per cent. per annum, semi-annually, payable on the first days of February and August of each year, principal due on the first day of August, 1922. Said bonds having been authorized and issued under and

by virtue of a resolution of the Board of Commissioners of the Town of Oxford, and a Judgment of the Superior Court of Granville county, rendered at the July Term, 1892, in the case of the Oxford and Coast Line R. R. Co., against the Board of Commissioners and the Mayor of the Town of Oxford. Signed Oxford and Coast Line R. R. Co., by Wm. F. Beasley, President, H. C. Herndon, Treasurer.

_____G. P. FLEMING, Town Clerk.

*Proceedings of the Board of Commissioners of the Town of Oxford, N. C., March* 16, 1893.—*Page* 313.

NORTH CAROLINA,          Oxford : Mayor's office,
      GRANVILLE COUNTY.          March 16, 1893.

Called meeting of the Board of Town Commissioners held this day, there were present : A. A. Hicks, Mayor; J. G. Hall, E. T. White, C. D. Osborn, W. L. Mitchell, J. F. Edwards, G. A. Coggeshall, J. M. Currin, Commissioners.

A. W. Graham addressed the Board and asked them to issue an order on the Town Treasurer for Six Hundred Dollars, with which to pay Coupons on O. & C. L. R. R. Bonds.

On motion of G. A. Coggeshall, the Clerk was instructed to issue an order on the town Treasurer, payable six months after date, for Six Hundred Dollars, to A. W. Graham, Attorney, to pay Coupons now due on O. & C. L. Railroad Bonds.

                                        E. T. CREWS,
                                          Clerk to Board.

The following are the portions of the statutes and Constitution, to which reference is made in the opinion.

Act of 1891, Ch. 315, Sec. 10 : " That whenever any

County, City, town or township shall issue bonds to aid in building said Oxford & Coast Line Railroad, the money derived from taxation of said railroad within said county shall be applied to the payment of the interest on said bonds so long as they shall remain outstanding, and in the event that two or more cities, towns or townships in any County shall issue bonds as aforesaid, then the money derived from the taxation of said railroad within said county shall be applied to the interest on said bonds in proportion to the amount of bonds so issued by said cities, towns or townships as aforesaid."

Act of 1885, Ch. 21, Sec. 30 (Private Laws): "That among the powers hereby conferred on the board of commissioners (of the town of Oxford) they may borrow money only by the consent of a majority of the qualified registered voters which consent shall be obtained by a vote of the citizens of the corporation after 30 days public notice, at which time those who consent to the same shall vote "approved," and those who do not consent shall vote "not approved"; they shall provide water, provide for repairing and cleaning the streets, regulate the market, take all proper means to prevent and extinguish fires, make regulations to cause due observance of Sunday, appoint and regulate town watches, suppress and remove nuisances, preserve the health of the town from contagious and infectious diseases, appoint constables to execute such precepts as the Mayor or other persons may lawfully issue to them to preserve the peace and order and execute the ordinances of the town, and shall appoint and provide for the pay and prescribe the duties of all such officers as may be deemed necessary; they shall have the right to regulate the charge for the carriage of persons, baggage and freight by omnibus or other vehicle, and to issue license to omnibuses, hacks,

drays or other vehicles used for transportation of persons or things for hire."

Const., Art. VII, Sec. 7: "No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same, except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein." `

*Messrs. J. S. Manning, Shepherd & Busbee* and *W. J. Leake*, for plaintiff (appellant).

*Messrs. W. A. Guthrie* and *Edwards & Royster*, for defendants.

AVERY, J. (after stating the facts): If an action had been brought by a tax-payer of the town of Oxford to enjoin the issue of bonds in payment of its subscription to The Oxford & Coast Line Railroad Company, any final judgment upon the merits would have operated as an estoppel, both upon other tax-payers of the town and the municipality itself. 2 Black on Judgments, Sec. 584. In two actions brought by that company against the mayor and commissioners of Oxford, asking for mandamus to compel the issuing of a subscription of forty thousand dollars in bonds to the capital stock of the company, in which a controversy arose, among other matters, as to the authority to make such subscription, a compromise decree, drawn in pursuance of a previous agreement between the parties, was entered in the two suits, consolidated by order of the Court into one, whereby the town was released from further liability upon the issue of twenty thousand dollars instead of forty thousand dollars in its bonds, payable to the company, and upon surrendering its right to call for certificates of stock in the company to the amount of forty thousand dollars. If the decree concluded the town from

questioning the validity of the bonds, the estoppel would be as effectual in favor of the plaintiff, who sues upon past due coupons of which it is the owner, as if the action were brought by the railroad company. *Thompson* v. *Lee County*, 3 Wallace, 327. Prior to the passage of the Act 1874-'75, Ch. 178 (*Code*, Sec. 574) an agreement to receive a part in lieu of the whole of a debt due was held to be a *nudum pactum* as to all in excess of the sum actually paid. *Currie* v. *Canady*, 78 N. C., 91; *Hayes* v. *Davidson*, 70 N. C., 573; *Mitchell* v. *Sawyer*, 71 N. C., 70; *Love* v. *Johnston*, 72 N. C., 415. But where such agreements have been made since the act was passed, they are deemed to have been entered into in as full contemplation of its provisions as though it had been incorporated into the contract. *Koonce* v. *Russell*, 103 N. C., 179. Indeed, independent of statutes, where disputed claims have been preferred against it, "a town may make a contract with a creditor whereby the latter agrees to discount or throw off a portion, and such an agreement (says Judge DILLON) is founded upon a sufficient consideration, and will be enforced." 1 Dillon on Mun. Corp., Sec. 477; *Baskerville* v. *Tweed*, 20 Me., 178; *Amy* v. *Shelby County*, &c., 114 U. S., 387. In our case there were mutual considerations which, it would seem, would have given vitality to the contract and made it enforcible even at common law. The town surrendered its claim to forty thousand in certificates of capital stock, in consideration of being released from its obligation to issue forty, instead of twenty, one thousand dollar bonds to the railroad company. We can see no force in the contention that the failure to deliver a release in accordance with the decree in any way affects its validity, when it does not appear that the railroad company ever refused or neglected on demand to execute it. The town cannot take advantage of the laches of its authorities in

failing to demand its execution, in order to repudiate their debt, if it is valid. The plaintiff was warranted in assuming that the town had demanded its execution and was not bound to look behind the decree to ascertain whether it had exercised common prudence in protecting itself. These twenty bonds recite that they are issued in pursuance of the power and authority granted in Chapter 49 of *The Code*, chapter 315, Acts 1891, and section 30, chapter 21, Acts 1885 (being the charter of the town) and also by virtue of an election held as provided for in the Acts referred to, and in accordance with the compromise decree in the cases to which we have referred. It is conceded without question that no municipal corporation is authorized to issue bonds unless the power to do so is granted either in express terms or by necessary implication by the legislature. The unavoidable implication arising from section 10, chapter 315, Laws 1891 (the charter of the company) is that it was the intention of the legislature to empower "counties, cities, towns and townships" to issue bonds to aid in building the road and to compel either corporate body that might lend its credit in that way, to pay all such tax as it might collect on the franchise and property of the completed road, in payment of the interest accruing thereon. But, it is insisted that the power can not be exercised in the face of the prohibitory provision of the Constitution (Art. VII, Sec. 7) unless the authority to loan its credit received the sanction of a majority of the qualified voters of the municipality, and that it is as essential to the validity of the bonds that the Legislature should in express terms authorize the election, and require specifically a vote of a majority of the qualified voters, as that it should empower the town to aid. It is admitted to be an essential prerequisite to the validity of such bonds that the Legislature should grant the power to aid, and that the majority

of the qualified voters should signify their approval by their ballots cast. The machinery for ascertaining the will of the electors is a secondary consideration. The main purpose was to prohibit the imposition of a tax for certain objects without the assent of a majority of the qualified voters. The Act of 1891 in assuming that counties, towns and townships may subscribe, impliedly manifests a purpose on the part of the Legislature to allow municipalities "to issue bonds to aid in building" this railroad, and leaves them at liberty to aid as may seem to them best, and by implication to do what they were expressly allowed to do in the charter of the Oxford & Clarksville Road, either make donations or subscriptions. The statute puts no restriction upon the town as to the manner of issuing its bonds in aid of the construction, leaving them to donate or subscribe at their option with the approval of the requisite number of voters. In the case of *Wood* v. *Oxford*, 97 N. C., 227, Justice MERRIMON, speaking of the contention that the provision in the railroad charter that if a majority of the votes cast were favorable the town would be authorized to issue the bonds was unconstitutional, said: "It may be that the statute contemplated that if a simple majority of the qualified voters, *voting*, shall be in favor of such donation, this shall be sufficient to authorize it to be made. This is questionable, but we need not decide whether it so provides or not, because the purpose to allow such donation to be made is manifest, and it appears in the case before us that a clear majority of all the qualified voters of the town of Oxford voted in favor of the proposed donation of forty thousand dollars in question, thus certainly meeting the essential prerequisites provided by the statute, and observing the provisions of the Constitution (Art. VII, Sec. 7) forbidding towns and other municipal corporations to make a debt, except, etc., unless by a vote of a majority of the

qualified voters therein, and likewise observing the require-
ments of the charter of the town." It is now well settled
that, under the Constitutional provision, a majority of the
qualified voters is necessary and, in the absence of proof to
the contrary, a majority of the registered voters will be
deemed a majority of the qualified voters. *Rigsbee* v.
*Durham, supra.*

The purpose of the Legislature to authorize the issue in
our case in order to aid in any way they might deem best,
is apparent. The fact that a majority of the qualified
voters have cast their ballots in favor of extending aid by
subscription, is undisputed. If it is not admitted, the
records of the town showing that a proposition to allow the
municipality to lend its aid by the issue of bonds was submit-
ted after thirty days' notice, and a majority of the qualified
registered electors signified their assent by voting " ap-
proved," and it is settled that such a record is conclusive evi-
dence that the will of the majority was so expressed. *Nor-
ment* v. *Charlotte,* 85 N. C., 387 ; *Cain* v. *Commissioners,*
86 N. C., 8 ; *Southerland* v. *Goldsboro,* 96 N. C., 49 ; *Duke*
v. *Brown, Ibid,* 127 ; *McDowell* v. *Construction Co.,* 96
N. C., 514; *Rigsbee* v. *Durham,* 98 N. C., 81. In some of
the cases which we have cited it is declared by the Court to
be immaterial that the act providing the machinery for ascer-
taining the wishes of the qualified voters had provided, in
direct conflict with the constitution as construed by the
Court, that a majority of the votes cast should be sufficient.
These decisions rest upon the ground that the two evils
intended to be guarded against were the using of the credit
of municipal corporations, first, without the assent of the
legislature clearly given, and, second, without the approval
of a majority of the qualified voters fairly ascertained. It
was this broad view which inspired the intimation that
either section 30 of the charter of Oxford, a section of a

railroad charter which was declared in part unconstitutional, or the constitutional provision itself in connection with the general election law, would be sufficient to authorize an election to ascertain the will of the voters, where the assent of the Legislature that the municipality might create a debt had been clearly given. In *Wood* v. *Oxford*, the Court said (after what has already been quoted from the opinion), " as the purpose of the Legislature to allow such donations to be made is clear and express, it is sufficient if the condition upon which it might be made has certainly, in the most adverse view of the proposition as to the vote, happened." In any aspect, it is beyond question that the requisite constitutional majority has approved of what the Legislature first clearly assented to—lending the aid of the town by issuing its bonds to the building of the railroad. With the legislative permission to so use its credit, we see no reason why the necessary implication should not follow that the town might ascertain the wishes of the voters in a way provided in the charter for the purpose of borrowing money in compliance with the same section of the organic law, or, in the absence of such special provision, under the general law governing elections held for municipalities, the natural inference being when an election is authorized, that it is to be held in the usual, if some unusual mode is not provided. Where Legislative sanction is given and the will of the majority of qualified voters is actually ascertained, it is certain that the danger-line has not been crossed so as to wrongfully subject municipalities to the burden of a debt for any purpose except necessary expenses. The imperative requirement of the Constitution is that there shall be a concurrence of the legislative and the popular will, the former evidenced by a grant of authority to vote, the latter by the record that a majority of the qualified voters have cast the ballots in favor of creating the debt. Whether the legisla-

tive purpose is expressed or may be fairly implied from the language of the statute, is immaterial (1 Dillon, *supra*, section 89 (55); *Clark* v. *City of DesMoines*, 87 Am. Dec., 423) as is the question whether the election is conducted under statutes passed for the particular purpose, or, in the absence of such special provision, under the general election law enacted for the town or for counties generally, so that the sense of the voters is unquestionably and fairly ascertained. The power to subscribe being given, the fair implication was that the legislature intended that the use of the machinery provided generally for taking a vote to authorize the borrowing of money might be used. The principle of strict construction is never " carried to such an unreasonable extent as to defeat the legislative purpose fairly appearing upon the entire charter or enactment." If the special provision for holding an election in a town or county fails to provide in detail the mode or what is in common parlance called the machinery for conducting it, it must be inferred that the legislature intended that general election laws might be resorted to, to fill in the *hiatus*, and not that the legislative will should be thwarted or defeated by any such omission.

The case of *Brenan* v. *Bank*, 144 U. S., 173, which was relied upon by the defendant is clearly distinguishable from that at bar. If the only authority for issuing the bonds, that gave rise to this controversy, were the provisions in the charter empowering the town to borrow money, it would be a case in point. But we have already adverted to the fact that the charter of the railroad company (Section 9, Ch. 315, Laws 1891) expressly contemplates and by implication authorizes the issuing of bonds by the town to aid in the building of the road (not simply the borrowing of money by such towns for corporate purposes) and, that in accordance with a familiar rule of construction, all

statutes bearing upon the subject must be construed *in pari materia.* Every doubt must be resolved in favor of the constitutionality of any act passed by the Legislature (*State* v. *Moore,* 104 N. C., 473) and upon the same principle where the assent of the Legislature to the creation of a municipal debt has been given by fair implication, it would be "sticking in the bark" to render such expression of its will nugatory by insisting that special election machinery should have been provided for ascertaining the popular feeling, when ·general laws can be made to subserve the purpose. It must be conceded that the result of the election cannot be drawn in question in this collateral proceeding, if the law authorized the holding of it. *McDowell* v. *Construction Co., supra.*

Pretermitting the question whether the Court could look beyond the compromise judgment for the purpose of determining whether the statute authorized the holding of the election, we have preferred to declare that the town was in fact authorized by fair implication of law to hold it. The purchaser of such coupons as those sued upon, must so far act upon the notice contained in the recitals, as a general rule, as to examine the statutes referred to, and ascertain at his peril whether the essential prerequisites to the validity of the bonds have been met both by Legislative and popular action. We hold that upon a fair construction of the organic law and pertinent statutes and their application to the facts of this case, there has been a sufficient compliance with the essential requirements of the law to render the election valid. We think, therefore, that the Court erred in holding that the plaintiff was not entitled to recover, and the judgment of non-suit must be set aside and a new trial granted.

### DEFENDANT'S APPEAL IN SAME CASE.

The facts are stated in the foregoing appeal. The defend-

ant objected to the judgment of non-suit and insisted upon the right of the town to demand a verdict and judgment thereon, and appealed from the judgment on that ground. The further answer of defendants was as follows:

The defendants, further answering by way of defense to said action, say:

1. That section 5 of Acts of the General Assembly of North Carolina, entitled "An Act to Incorporate the Oxford and Coast Line Railroad Company," and ratified the 5th day of March, A. D. 1891, which is in complaint mentioned and referred to, provided, amongst other things, that upon the subscription of five thousand dollars of the stock and the election of directors as therein is mentioned, said company should be deemed and held fully organized for all purposes, and might proceed to carry out the objects of their charter; and the defendants further say, upon information and belief, that while it is true that prior to the pretended organization of said company hereinafter mentioned, to-wit: on or about the 12th day of March, 1891, the amount of fifty-four hundred dollars or thereabout, was in form and appearance subscribed (all by private individuals) to the capital stock of said company, yet that said subscriptions or nearly all of them, were not in good faith, but were made with an agreement or understanding between said subscribers, generally, that each should pay in on account of his said subscription the sum of ten dollars only, for the purpose of meeting expenses preliminary to the commencement of the construction of said railroad, and should never be called on or required to pay anything more on account of said subscriptions, it being the intention of said subscribers in making such subscriptions to merely enable them to effect a pretended organization of said company with an appearance of legality and of a compliance with the provisions of said charter;

116—24

and that notwithstanding there had not been *bona fide*
subscribed and so not really subscribed to the capital stock
of the said company the sum of five thousand dollars, as
required by said charter before said company could be
legally organized, yet the said subscribers, or some of them,
proceeded to make and did make a pretended organization
of said company by an election of directors, and that after-
wards all said subscribers, with two exceptions, refused and
failed to pay anything further on their said subscriptions,
upon the ground of the agreement and understanding
aforesaid, and indeed were not called on to pay anything
in addition to the ten dollars aforesaid, until after the
Board of Commissioners of Oxford refused to issue the said
bonds of forty thousand dollars, which said company
claimed they were bound to do, in pursuance of said elec-
tion mentioned in the complaint, and that said subscribers
were then called on to pay their said subscriptions and
refused and failed to pay the same, although they were
threatened with a suit or suits to compel them to do so ;
and the defendants further say they deny that the Oxford
and Coast Line Railroad Company mentioned in the com-
plaint, and which is the same that was so pretended to be
organized as aforesaid, was ever duly or legally organized
under said act of the fifth of March, 1891, or was at the
time of the issuing of bonds, so-called, mentioned in the
complaint, or is a legally constituted and valid corporation,
and was not nor is entitled to receive payment of subscrip-
tions to the capital stock of said Oxford and Coast Line
Company, chartered by said act.

2. The defendants further say they deny that chapter 49
of *The Code* of North Carolina or the election mentioned
in the complaint, authorizes any subscription to the capital
stock of said Oxford and Coast Line Railroad Company, or
the issue of any bonds for such purpose by the Board of

Commissioners of Oxford, or that said chapter 49 of *The Code* of North Carolina or any of said acts of the General Assembly of North Carolina authorized or provided for the holding of said election or that the same was ordered or held by any authority of law; and the defendants further say that however the said bonds, so-called, may purport to have been issued, the defendants deny that in point of fact they were issued in pursuance of any powers or authority granted by said chapter 49 of *The Code* of North Carolina or in pursuance of any authority granted by any of the Acts of the General Assembly of North Carolina in said complaint mentioned and referred to, or in pursuance of said election, but that they were really and truly issued in pursuance of said agreement of compromise and consent, judgment or decree only. And the defendants further say that the only election authorized and provided for in said charter of said town of Oxford, is an election for the election of officers as therein is set forth and that even if the provisions of said charter of said town of Oxford could be considered as including such an election as that mentioned in said complaint (which the defendants deny) yet they deny that said election was regularly or legally held in the manner prescribed in said charter for the election therein authorized — that said charter of said town of Oxford in the 12th section provides amongst other things, that for the purpose of the election, therein authorized and provided for, the Commissioners shall appoint in manner as therein set forth, three inspectors, and chapter 62 of the 2nd volume of *The Code* of North Carolina, Section 3788, (which applies when not inconsistent with the charter) provides that such election as is mentioned in the complaint, shall be held under the inspection of such persons, not exceeding three, as the Board of Town Commissioners may appoint, and the defendants further say that the

inspectors who held and conducted the election in the complaint mentioned were four in number and were appointed not by Commissioners, but by the Mayor who had no authority to appoint the same; and the defendants further say that said election mentioned in said complaint was utterly null and void and gave the Board of Commissioners of Oxford no power or authority to subscribe to the capital stock of said Oxford and Coast Line Railroad Company (and they have never done so) or to issue bonds for any amount as a subscription to the same or for any other purpose.

3. The defendants further say that at the time of the ordering of said election in the complaint mentioned, and before and at the same time of holding the same as aforesaid, it was represented to the citizens and taxpayers of the town of Oxford by the organizers of said Oxford and Coast Line Railroad Company as aforesaid and the promoters of their plans, that their plan and purpose was to build (as they were authorized by their charter to do) a railroad from Oxford, passing through Franklin county, to Springhope in the county of Nash, North Carolina, which had and has a connection by railroad with the Wilmington and Weldon Railroad at Rocky Mount, in Nash county, North Carolina, so as to bring Oxford in direct and convenient communication with the Eastern part of the State—that the said representations were assiduously made and circulated with the view of inducing the voters of Oxford to favor the proposition submitted to them in said election, and a great majority of those who voted in favor of said proposition in said election were induced to do so by such representations; that after said election the said Oxford and Coast Line Railroad Company, so-called, laid out and commenced the construction of a railroad only from Oxford aforesaid to a point on the Durham and Northern Railroad, at Jack Dick-

erson's, in said county of Granville, a distance of not more than four and a half miles from Oxford, if that. And the defendants further say, upon information and belief, that there was and is no purpose on the part of said Oxford and Coast Line Railroad Company, so-called, to extend said railroad beyond said point on said Durham and Northern Railroad, and that it never had nor has it been able to obtain the means to do so; that it never had and never has been able to obtain the means to complete said railroad between Oxford and said point on said Durham and Northern Railroad; that the voters of Oxford did not have in view when voting in said election or anticipate the building of a railroad from Oxford to said point on said Durham and Northern Railroad merely; that the same, if completed and operated, would be of little or no benefit or advantage to Oxford in comparison with such a railroad as they understood and believed was to be built as aforesaid and that a large majority of the voters of Oxford never would have voted in favor of the proposition submitted to them, as aforesaid, or in favor of any other proposition to subscribe to the capital stock of said Oxford and Coast Line Railroad Company or to incur any obligations of any kind in respect to the same, but for their belief, induced and caused by the representations before mentioned, that said railroad was to be what the name of said company imports and was to be built from Oxford to Springhope aforesaid, so as to place Oxford in direct and convenient communication with Eastern North Carolina as aforesaid.

4. The defendants further say that said decree directed and required that co-temporaneously with the issuing and delivery to said Oxford and Coast Line Railroad Company of the bonds to the amount of twenty thousand dollars in the said decree directed to be issued and delivered to said Company, the said Company at its own charges should

deliver to the Board of Commissioners of Oxford, a release such as in said decree specified, and that no such release has ever been executed and delivered to the Board of Commissioners of Oxford and the defendants insist that if the Board of Commissioners had any legal right or power to issue and deliver said bonds at all (which the defendants deny as aforesaid) yet it had no right or power to issue and deliver said bonds without at the same time receiving from the said Oxford and Coast Line Railroad Company such release, and that the delivery of said bonds in the complaint mentioned to said Company was illegal, null and void.

5. The defendants further say that at the time of the making of said judgment or decree and the giving of said order for $600.00 to said A. W. Graham, as aforesaid, the only work that had been done towards the construction of said railroad was the grading of the same nearly to Oxford from said point on said Durham and Northern Railroad, and in order to the completion of said railroad, the grading was to be finished and culverts and bridges were to be built and other things to be done; that said decree requires said company to complete the said railroad, then in course of construction from Oxford to said point on said Durham·and Northern Railroad, and put the same in operation within a reasonable time from and after the isssuing of the bonds therein directed to be issued, and that at the time of the making of said decree and the giving of said order for $600 to A. W. Graham aforesaid, and before, the officers and agents of said Oxford and Coast Line Railroad Company repeatedly stated and assured the then Commissioners of Oxford that said railroad would be completed and put in operation within sixty or ninety days and although the completion of said railroad was not more difficult or costly than ordinary, and the same could, with the use of reasonable diligence, have been completed and put in operation within

the time which it was stated it would be as aforesaid, yet not only has nothing been done towards the completion of said railroad, since the issuing of said bonds, so-called, but the work that had already been done as aforesaid was let go to decay by the action of the elements, and has been much impaired and damaged and would require considerable expense to put it in its former condition. And the defendants say, upon information and belief, that said Oxford and Coast Line Railroad Company has no intention or expectation of completing and putting in operation the said railroad and has no means nor any expectation of being able to obtain the means of doing so, and has discontinued and abandoned the work on the same.

6. The defendants further say that if said Oxford and Coast Line Railroad Company were a legal corporation and said bonds and coupons, so-called, and mentioned in the complaint, were legally issued and delivered to said company and were valid, which the defendants deny as aforesaid, yet said company held said bonds or their proceeds under and by virtue of said decree in special trust and exclusively for the special purpose specified in said decree, and none other, and that said trust attached to said bonds in the hands of all persons or parties to whom the same might come and that the plaintiff when and before becoming owner of said bonds (if plaintiff is owner of the same) was put upon inquiry and had notice by matter appearing upon the face of said bonds and by said decree and other proceedings in said actions in which said decree was rendered as aforesaid (and which were notice to the plaintiff and all other persons or parties) of the matter contained therein, and the plaintiff ought to be considered and adjudged as a trustee of said bonds and coupons and holding the same in trust for the purposes stated and set forth in said decree and bound for the application of the same or their pro-

ceeds to said purposes exclusively, and none other, and is not entitled to recover at all in this action, or at all events without giving sufficient security for the complete performance of all things which said decree directed and required said company to do and perform, and which are yet unperformed. And the defendants further say, upon information and belief, that the plaintiff at the time of becoming holder of said bonds, so-called, in the complaint mentioned (if the plaintiff is holder of the same as alleged in said complaint, or any of them) had notice not only of said false representations made as aforesaid to induce the voters of Oxford to vote in favor of the proposition voted on in said election, and of the illegality of said election and of the want of legal authority to order or hold the same, and of the want of sufficient power and authority, in law, on the part of the Board of Commissioners issuing said bonds, so-called, to issue the same, and of the then condition of said railroad, but also of the inability of the so-called Oxford and Coast Line Railroad Company to complete the said railroad and put it in operation. And the defendants further say, upon information and belief, that said so-called bonds or their proceeds were not used, applied and disposed of exclusively to and for the purpose specified and directed in said decree, but that a large part of the same was otherwise used, applied and disposed of, contrary to the directions and requirements of said decree.

7. The defendants further say that said election being without any authority of law and null and void and the Board of Commissioners of Oxford issuing said bonds, so-called, having no sufficient legal power or authority to issue the same, as aforesaid, neither in the agreement of compromise is said decree mentioned nor the said decree (the same being a consent decree) did or could confer upon said Board of Commissioners any power or authority to

issue said so-called bonds so as to conclude or affect any subsequent Board of Commissioners, and least of all the citizens and taxpayers of said town of Oxford, even if the same had been issued in accordance with said decree, and that to compel the citizens and taxpayers of Oxford under the circumstances to pay said so-called bonds or coupons of interest on the same, or any part thereof (for which neither they nor the Board of Commissioners of Oxford have ever received any advantage or valuable consideration) would be a great wrong and injustice to them ; and that the said so-called bonds and coupons ought to be required to be surrendred and canceled.

8. And for a still further defence in this action, the defendants say they are advised and believe that the alleged bonds and coupons by reason of the recitals therein and matters appearing upon their face are not what the law denominates negotiable instruments and that all holders of the same, as well the plaintiff in said two actions in which said decree was made, the said Oxford and Coast Line Railroad Company *et al*, referred to in said bonds, as all other persons or parties hereafter receiving the same from said plaintiff in said two actions, the Oxford and Coast Line Railroad Company *et al*, took the same upon notice and inquiry as to all matters disclosed by the record, compromise, agreement and decree in the suit referred to, and subject to all the stipulations, covenants, agreements and conditions and disabilities disclosed by said record compromise, agreement and decree, and amongst other things, to the following : 1st. That while said bonds purported on their face to be issued by virtue of the Acts of the General Assembly of North Carolina, therein referred to and in payment of a subscription for stock in the Oxford and Coast Line Railroad Company, such was really and in truth not the fact at all, as the plaintiff well knew or could have ascertained by

inquiry, and said compromise agreement, which was and is the basis of said decree, expressly superseded and canceled (as it was intended to do when said Oxford and Coast Line Railroad Company executed the release therein provided for) the subscription of stock in said Oxford and Coast Line Railroad Company theretofore contemplated by the voters, and which was attempted as aforesaid to be authorized by the voters of the town of Oxford as aforesaid,'and the said bonds while purporting to be issued for the subscription aforesaid, were in fact issued for the settlement of a pretended claim on the part of the plaintiff in said two actions and without compliance with the former vote of the voters of Oxford and without ever being submitted to a vote of the people of Oxford at all.   2nd. That by the terms of the said agreement, said so-called bonds and coupons were not issued to raise a fund for the expenses of the government of the town of Oxford and to meet its obligations or to borrow money for such purposes, but were issued as a gift or bonus to said Oxford and Coast Line Railroad Company to pay off the debts of said railroad company and aid in the completion of the railroad theretofore commenced as aforesaid, and that too with the express stipulation and agreement on the part of the plaintiffs in the actions in which said decree was made as aforesaid and to whom said bonds were delivered, that said bonds or their proceeds were to be exclusively used, applied and disposed of as directed in said decree and including the completion and putting into operation of said railroad in a reasonable time, as directed and required by said decree, which strictly prohibited and enjoined said Oxford and Coast Line Railroad Company, its officers and agents from using, applying and disposing of said bonds therein directed to be issued or their proceeds for any other purpose than in said decree is specified.   And so the defendants aver that if the plaintiff

is the owner and holder of the bonds and coupons mentioned in the complaint, the plaintiff took them with notice as aforesaid of their invalidity and of the equities and incumbrances attached thereto, and also of the failure of said Oxford and Coast Line Railroad Company to comply with its covenants and agreements, and the terms of said decree under which the same was issued.

9. The defendants further answering, say that all and singular the allegations of said complaint which are not hereinbefore admitted or denied, they deny.

10. That defendants further answering, say that said Oxford and Coast Line Railroad Company is a necessary party and ought to be made a party to this action, and yet the plaintiff has not made said railroad company a party to the same.

11. The defendants further say, answering by way of counter claim, here refer to and reaffirm all and singular the matters and things hereinbefore stated and set forth in manner and form as the same are so stated and set forth and as particularly as if the same were here set down and repeated, say that the said bonds and coupons which the plaintiff in said complaint claims to be the holder and owner of, or ought to be, and they demand that the same shall be required to be, surrendered and canceled.

Whereupon, the defendants demand judgment :

First—That said bonds and coupons of which plaintiff claims to be holder and owner as aforesaid, be required to be surrendered and canceled.

Second—For such further and other relief in the premises as the nature of the case may appear to require and to the Court shall seem meet. And the defendants having fully answered said complaint in so far as they are advised, it is necessary or material to answer the same pray, etc.

BANK *v.* COMMISSIONERS.

AVERY, J.: The plaintiff had a right to insist upon a judgment of non-suit at the close of the evidence in deference to the intimation of the Court, unless the defendant had set up in its answer a counter claim which, if made good by the proof, would entitle the town to affirmative relief. *Manufacturing Co.* v. *Buxton,* 105 N. C., 74; *Pass* v. *Pass,* 109 N. C., 484. The defendant might have made the subscription to the capital stock of the company dependent upon the completion of its road to a certain point before a given time, and the failure to do so was an oversight for which the plaintiff here, who was at most not bound to look further than to see whether those things that were essentially pre-requisite as to the issuing of a valid municipal bond had been done, cannot be made to suffer. It was competent for the State to authorize the institution of a suit to dissolve the corporation for non-user of its powers (*Bass* v. *Navigation Co.,* 111 N. C., 439) but the validity of the coupons sued upon cannot be drawn in question in any such indirect way as that relied upon in the answer. The mere prayer, at the conclusion of the answer, that the bonds and coupons, of which the plaintiff claimed to be the owner, should be surrendered up to be canceled, is not of itself such a demand for affirmative relief as would entitle the defendant to insist upon a verdict and judgment thereon instead of judgment of non-suit. It is not the formal demand but the preceding averments that constitute the independant cause of action, which the defendant has elected to set up as a counter claim, when sued for any matter growing out of the same transaction, or to make the ground of a new suit. The defendant has failed to make any allegations which would entitle it to affirmative relief. The mere denials, which put at issue the allegations upon which the plaintiff bases its claim to relief, are plainly insufficient; and, for the reasons given, the averment of

facts upon which the State might proceed for a forfeiture of the Company's franchise, would not constitute an independent cause of action in favor of the defendant.

We see no sufficient reason to take this case out of the general rule that the plaintiff may submit to judgment of non-suit and appeal, when the Court makes an intimation adverse to him, at the conclusion of the evidence. ·

The ruling of the Court, in so far as it allowed the judgment of non-suit to be entered, was not erroneous.

No Error.