J. H. GLENN *et al.* v. W. B. WRAY Sheriff *et al.*

(Decided May 29, 1900.)

*Bonds of Stoneville, Rockingham County, N. C.—Roanoke and Southern Railway Co., Act 1887, chap. 87—Claybrook v. Commissioners, 117 N. C., 456—Constitutional Mode of Enactment, Art II, Section 14—Res Non Judicata—Estoppel—Amendment.*

1. The fact that an action to impeach the validity of the bonds in question on the ground of irregularity in the election was brought and failed, is no estoppel to a second action to impeach their validity on the ground that the act authorizing an election was not passed in the mode required by the Constitution.

2. Neither would the payment of interest preclude the inquiry as to the validity of the bonds.

3. It was competent for the Legislature by a provision in a railroad charter to authorize the  town to hold an election upon the issue of bonds, without in terms amending the town charter for that purpose.

4. The Constitution, Art. II, sec. 14, renders invalid any act to raise money, or create a debt, or lay a tax by the State, or to authorize any county, city or town to do so, unless the bill shall have passed three several readings on three several days in each House, and unless the yeas and nays on the second and third readings shall have been entered on the journals.

5. If an amendment in a material matter is made to the bill, the amended bill should be read over again three times in each House, with the yea and nay vote on the second and third readings entered on the Journals.

6 The Constitution requires in such cases a majority of the registered voters, and not simply a majority of those voting.

CIVIL ACTION in nature of creditors' bill to enjoin the payment of town bonds of Stoneville in aid of Roanoke and Southern Railway, issued under the Act of 1887, chap. 87, heard by consent before *Starbuck, J.,* at Chambers, August

4, 1899, in case pending in ROCKINGHAM Superior Court, Fall Term, 1899. The application was placed upon the ground that the act authorizing the election was not passed in the mode required by the Constitution. His Honor ruled otherwise, and refused the injunction. Plaintiffs excepted and appealed. The opinion reviews the facts.

*Mr. Louis M. Swink,* for appellants.
*Messrs. Watson, Buxton & Watson,* for appellee.

CLARK, J. The plaintiffs are not estopped by the decision in *Claybrook v. Commissioners,* 117 N. C., 456. That was an action to impeach the validity of the bonds now in question, but upon the ground of irregularity in the election, and that alone. The decision therein is conclusive that the bonds are not invalid on that ground. The present action is to attack their validity upon the entirely different ground that the act authorizing an election was not passed in the mode required by the Constitution. This was not within the scope of the litigation in *Claybrook v. Commissioners,* and has not been passed upon. Hence it is not *res judicata.* *Tyler v. Capehart,* 125 N. C., 64, which cites *Williams v. Clouse,* 91 N. C., 327; *Wagon Co. v. Byrd,* 119 N. C., 460. A case exactly in point is *Bank v. Commissioners,* 116 N. C., 339. In that case the indebtedness was first before this Court upon an allegation of invalidity because the bonds were not authorized by the town charter of Oxford. The Court sustained the objection, but found error because the bonds recited on their face that they were authorized by the act chartering a railroad company, in whose aid the bonds had been voted and issued. There had been no allegation in the pleadings as to the latter act, and its validity had not been passed upon. When the case went back, the defense was set up that the

latter act was invalid to authorize the issue of bonds because not passed in the mode required by the Constitution, Art. II, sec. 14, and on appeal that contention was sustained. *Bank v. Commissioners,* 119 N. C., 214. Of course the payment of interest by the Commissioners would be no estoppel. *Commissioners v. Payne,* 123 N. C., 432, and cases cited at p. 489.

The charter of the town of Stoneville did not authorize the issue of the bonds in this case, but it was competent for the Legislature, by a provision in the charter of a railroad company, to authorize the town to hold an election to authorize such issue, without in terms amending the charter of the town. *Jones v. Commissioners,* 107 N. C., 265; *Wood v. Oxford,* 97 N. C., 227; *Bank v. Commissioners,* 116 N. C., 339, 363.

The Constitution, Art. II, sec. 14, renders invalid any act to raise money or create a debt or lay a tax by the State, or to authorize any county, city or town to do so, unless the bill shall have passed three several readings on three several days in each House, and unless the yeas and nays on the second and third readings shall have been entered on the Journals. This is a constitutional requirement, and, unless strictly complied with, the attempted act of the Legislature confers no authority, and is without any effect whatever. It is a restriction upon the exercise of legislative power, which the sovereign power has written in the face of the organic instrument which created the Legislature. The creature can not transcend the limits placed upon it by its creator. *Bank v. Commissioners,* 119 N. C., 214; *Commissioners v. Snuggs,* 121 N. C., 394; *Mayo v. Commissioners,* 122 N. C., 5; *Rodman v. Washington, Ibid,* 39; *Charlotte v. Sheppard, Ibid,* 602; *Commissioners v. Call,* 123 N. C., 308; *McGuire v. Williams, Ibid,* 349; *Commissioners v. Payne, Ibid,* 432; *Smathers v. Commissioners,* 125 N. C., 480.

It therefore only remains to consider whether the act

authorizing the election, upon the issue of those bonds, was passed in the manner required by the Constitution.  It appears from the Journals that the bill passed its three several readings in each House, on three several days, and that the yeas and nays were duly entered on the Journals on the second and third readings in each House.  On the third reading in the Senate, the bill was amended by inserting the words "a majority of," and as thus amended, the bill passed its third reading, and being sent back to the House of Representatives, the amendment was concurred in, and the bill was duly enrolled and ratified.

If the amendment were in a material matter, it would be necessary that the amended bill should be read over again three times in each House, with the yea and nay vote on the second and third readings entered on the Journals.  It is the bill in its final shape, not in another and different form, which requires these preliminaries to its validity.  It would be a clear evasion of the constitutional guarantees and of the restriction upon legislative power, if, after a bill has passed one House and two readings in the other in the required manner, it should then be amended into something else; for, in that case, the bill as enacted into law will have had only one reading in one House in the constitutional mode and a concurrence in the other, without a yea and nay vote recorded on the Journals.  In ordinary legislation, material amendments may be made even on the last reading in the second House, and when concurred in by the other House the bill is law. In such cases, the ratification is conclusive of the passage of the act.  But it is otherwise as to legislation which the Legislature is restricted from passing except in a manner specifically pointed out and prescribed.  In the latter case, any substantial material amendment requires the passage of the amended bill, in the prescribed manner, *de novo*.  *Norman*

*v. Kentucky,* 18 L. R. A., 557. A statute may be ordinary legislation, not coming within the restrictions of the Constitution, Art. II, sec. 14, except as to one or more sections. *Riggsbee v. Town of Durham,* 94 N. C., 800. Here, the chapter in question (chap. 87, Laws 1887), is not impeached except as to sec. 17, and that section reads: "It shall be lawful for any county, township, city or town, through or near which the said road may run, to subscribe for and hold stock in said company or in any section thereof, in case any section be built alone, whenever such subscription shall be authorized under the provisions of this act by *a majority of all the qualified voters* of such county, township, city or town." The words in italics are those added by the amendment made on the third reading in the Senate, and afterwards concurred in by the House. The amendment was immaterial, for it only placed in express words in the section that which was its meaning, if the words in italics had not been inserted. We take it, that the original requirement "by all the qualified voters" meant simply "by the qualified voters" or "by the voters," and that has always been held to mean "by a majority of the qualified voters," i. e. that a majority merely of those voting would not be sufficient in cases of this kind, but that the Constitution requires a majority of the registered voters. *Norment v. Charlotte,* 85 N. C., 387; *Duke v. Brown,* 96 N. C., 127; *Wood v. Oxford,* 97 N. C., 227; *Railroad v. Commissioners,* 109 N. C., 159.

We do not think that the bill before amendment meant to require a unanimous vote, but merely a majority of all the qualified voters, instead of a majority only of those voting.

The restraining order was therefore properly dissolved.

Affirmed.