## COMMISSIONERS v. PACKING CO.

(Filed April 19, 1904).

1. STATUTES—*General Assembly—Evidence—The Code, sec. 2867.*

The journals of the general assembly are conclusive evidence as to the passage of an act and cannot be contradicted by entries made on an original bill.

2. BURDEN OF PROOF—*Statutes—Evidence.*

The burden of proving that a statute was not passed in accordance with the constitution is on the person alleging its invalidity.

3. TAXATION—*Corporations—Foreign Corporations—Acts 1901, ch. 91.*

Acts 1901, ch. 91, levying an annual franchise tax on corporations is lawful and applies to foreign corporations doing business in this state.

4. FINDINGS OF COURT—*Judge—Appeal.*

A finding of facts by the trial judge by consent of parties is conclusive on appeal where there is any evidence to sustain the same.

ACTION by the State and Commissioners of New Hanover County against the Armour Packing Company, heard by *Judge Geo. H. Brown,* at October Term, 1903, of the Superior Court of NEW HANOVER County.

This action was brought to recover license taxes alleged to be due by the defendant to the plaintiffs under section 91 of the Revenue Act of 1901. A jury trial was waived, and the Court found as facts that the defendant is a corporation of the State of New Jersey with a capital stock of one million dollars, and was engaged during the years 1901 and 1902 in the business of selling, dealing in and distributing meats, canned goods and other articles of trade at wholesale in this State, with its principal office at Wilmington and three offices at other places in this State, all office reports

being sent directly to Kansas City. That license taxes under said section were duly levied by the proper authorities of New Hanover County for the years 1901 and 1902, and a demand made upon the defendant for the payment of the same and a similar demand also made by the State for its taxes for those years, but payment was refused. That the Revenue Act of 1901 appears by the Senate and House Journals to have been read, as a whole, on three several days in each house of the General Assembly, and the ayes and noes were entered on the journals upon the second and third readings. That the bill was amended in the Senate, it appears in the journal, as to several sections, but there is nothing in the entries on the journal to show that section 91 was one of the sections so amended. The defendant introduced in evidence the original bill filed in the State Librarian's office, and from the entries therein it appears that the bill was amended in the Senate by inserting in what was section 88, between the word "corporation" and the word "railroad," the words "organized under the laws of this State," and that section 85 as thus amended became section 95, and that thereafter section 95 was amended by inserting after the word "State" and before the word "railroads" the words "or doing business in this State," and by adding to the section the words "provided further, that the tax provided for under this section shall be payable in the county of this State where it has its principal office." That said amendments were reported from a committee of conference and concurred in without a vote on three several days and without entering the ayes and noes on the journals, and section 95 was then numbered 91. That the defendant has paid the taxes due under section 66 of said act and imposed upon all agents of packing houses doing business in this State. No point was made in the Court below as to the

joinder of the plaintiffs, the State and the county, in one action. 112 N. C., 34.

The Court gave judgment for the plaintiffs and the defendant appealed.

*George Rountree* and *J. O. Carr,* for the plaintiffs.
*J. D. Bellamy,* for the defendant.

WALKER, J., after stating the case. The contentions of the defendant in this case relate to the validity and the interpretation of section 91 of the Revenue Act, it being chapter 9 of the Acts of 1901, and are as follows: (1) That section 91 was not passed in accordance with the provisions of the Constitution, Article II, section 14, as the said section was amended after the original bill had passed its several readings in each House by the insertion of the words "or doing business in this State," and of the proviso, which is as follows: "Provided further, that the tax provided for under this section shall be payable in the county of this State where it has its principal office." And that after the bill was thus amended it was not read three several times in each house, nor were the ayes and noes on the second and third readings entered on the journal, as required by the said article and section of the Constitution. (2) That neither the State nor any county thereof can collect the tax, because section 91 of the Revenue Act of 1901 applies only to corporations organized under the laws of this State, and (3) That even if the State can collect the tax under section 91 of said act no county can do so, as it is a tax on the franchise of the corporation, and not a license or privilege tax, and the act confers no authority upon a county to collect such a tax.

We will consider these propositions in the order above stated.

In the Constitution of the State, Article II, section 14, it is provided "that no law shall be passed to impose any tax upon the people of the State, or to allow the counties to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days and agreed to by each house respectively, and unless the ayes and noes on the second and third readings of the bill shall have been entered on the journal."

Assuming, for the sake of the argument, that the defendant, a non-resident corporation and not a citizen of this State, can avail itself of any non-compliance with the provisions of that section (which by its terms applies only to a law imposing a tax upon the people of the State) for the reason that it is entitled to the rights and privileges of the citizens of this State or to the equal protection of its laws (*Blake v. McClung,* 172 U. S., 239), and assuming further that the section embraces an amendment to a bill, as well as the bill itself, if it is a material one and imposes a new tax or increases a tax already provided for in the bill, we do not think that the defendant has succeeded in showing that the bill was not passed in strict accordance with the provisions of that section, or that any amendment to the bill imposing the license taxes which the plaintiffs seek to recover in this case was passed without a compliance with the requirements of the Constitution as contained in that section. The Judge below found the facts by consent of the parties, a jury trial having been expressly waived, and any decision we may make must have reference to those facts as found and set out in the case and can rest on them alone. We are not at liberty to consider any extraneous facts or any evidence of such facts nor any facts, even if they have been agreed upon, provided the law forbids them to be used for the purpose of rebutting the presumption of regularity

135—5

arising from the ratification of the act, nor can the defendant show in any other way, or by any other evidence than that which the law says shall be the only kind of proof, the fact that the requirements of the Constitution were not observed. The Judge finds "that the Revenue Act of 1901 appears by the Senate and House Journals to have been read as a whole on three several days in each house of the General Assembly, and that the ayes and noes were entered on the journals upon the second and third readings." It is true he further finds that the bill, after it passed the House, was amended in the Senate, the amendments affecting about thirty sections of the bill; that a conference committee was appointed, and that its report, recommending that the House concur in a large number of the Senate's amendments and that the Senate recede from certain of its amendments, was adopted, and that the bill as thus amended was not read upon three several days in each house, nor were the ayes and noes entered upon the journals on the second and third readings. But it nowhere appears by any competent proof or by the admission of facts which we can consider, that any of those amendments were of such a kind as to require them to be passed in the manner provided in Article II, section 14, of the Constitution, if that section applies to amendments to a bill, which it is not now necessary for us to decide.

We have, then, the ratification of the bill, which imports that it has become a law in due course of procedure, and its authentication as a bill that has passed the proper legislative body is complete and unimpeachable (*Scarborough v. Robinson,* 81 N. C., 409; *Carr v. Coke,* 116 N. C., 223, 28 L. R. A., 737, 47 Am. St. Rep., 801; *Field v. Clark,* 149 U. S., 649; *Paughbom v. Young,* 32 N. J. Law, 29; *Wilson v. Markley,* 133 N. C., 616), unless the Constitution requires that it should be passed in a certain way which must appear

in the journals, in which case reference may be had to the journals as evidence in the Court below to determine whether it passed in that way. *Bank v. Comrs.,* 119 N. C., 214. We have the further fact, which was found by the Judge, that the bill was read "as a whole" on three several days in each house, and the ayes and noes on the second and third readings duly entered on the journals. In order to show that this tax was imposed by an amendment in the Senate, the defendant asks us to consider the facts found by the Judge as to the entries on the original bill which is filed in the State Librarian's office. This we are not permitted to do, although it may appear therefrom that such an amendment was adopted without compliance with Article II, section 14. The Constitution requires that it should appear, not from the entries on the original bill, but from the journal, that the bill was properly read and that the necessary entry of the ayes and noes was made. If the journal shows that the bill was regularly passed, no evidence will be received to contradict what is therein recorded. The law requires the journals of the General Assembly to be deposited with the Secretary of State (The Code, section 2867), and these journals, or a copy of them, certified as provided by law, are the only evidence that can be resorted to in order to overcome the presumption arising from the ratification of the act and to invalidate it. It can be done in this way, but in no other. If it does not appear in the journals that the bill has been passed as required by Article II, section 14, the act is invalid, and if it appears that it has so passed then it is valid. In neither case can the journals be contradicted by extraneous proof.

In *Gatlin v. Tarboro,* 78 N. C., 119, this Court, by *Rodman, J.,* in discussing the necessity of proving that thirty days' notice of the application to pass a private bill had been given, says: "We cannot accept the agreement of the

parties that no notice was in fact given, as proof that it did not appear to the Legislature that the required notice had been given. In such a case the best and only proof is by the record. Our opinion on this point is supported by a recent decision in Illinois (*Happel v. Brethauer,* 70 Ill., 166, 22 Am. Rep., 70). If any weight were allowed to admissions of this sort, the law might change as each case was presented." In the case of *Happel v. Brethauer,* just cited, the Court held that if the Constitution had not been complied with in the passage of a bill the fact must be shown by reference to the journals, and the Court says "In no other mode can we be properly advised." In *Osborne v. Staley,* 5 W. Va., 85, 13 Am. Rep., 640, it was held that, on a question touching the validity of an act, the Court can look beyond the authentication of the act to the journal of either branch of the Legislature to see if the bill passed by the required number of votes and that the legislative declaration upon that question is conclusive. In *Wise v. Bigger,* 79 Va., 269, where a learned discussion of the question will be found, the Court held that the Constitution required a journal to be kept of the proceedings of the Legislature and that journal showed that the bill then under consideration had passed by the requisite majority. "In the face of the solemn record," says the Court, "in which the Senate certifies its proceedings in a matter of fact relating to its own conduct—in the apparent performance of its legal functions—this Court is asked to inquire into or to dispute the veracity of the certificate. To do this would be to violate both the letter and the spirit of the Constitution; to invade a co-ordinate and independent department of the government, and to interfere with the separate and legitimate power and functions of the Legislature." In 1 Greenleaf on Evidence (16 Ed.), section 491, we find it stated that "the journals of either house are the proper

evidence of the action of that house upon all matters before
it." To the same effect are the following authorities:
Cooley's Const. Lim. (7 Ed.), p. 201; Black's Const. Law,
60; Ordronaux's Const. Lim., 382; *Happel v. Brethauer,*
70 Ill., 166; *Attorney-General v. Rice,* 64 Mich., 385;
*Detroit v. Wentz,* 91 Mich., 78, 16 L. R. A., 59; *White v.
Hinton,* 17 L. R. A., 66; Op. of Justices, 52 N. H., 622.
In *State v. Smith,* 44 Ohio St., 348, it is said: "There are
two rules in this country as to what evidence is admissible
to authenticate the passage of a statute. One is according
to the English doctrine, which is that it is not competent
to go behind the parliamentary rolls; the other is, that it is
competent to go behind the enrollment of the statute to the
journal. There is no sanction or authority for receiving evi-
dence beyond the enrollment and the journal; and these
records are conclusive and binding upon the Courts."
Numerous cases decided in this country are cited by the
Court to sustain its conclusion.

The burden is always on the party who alleges that a
statute was not passed according to the constitutional require-
ments and he must furnish the competent evidence neces-
sary to overcome the presumption arising from the ratifica-
tion of the act. This proof must appear in the record.
*Railroad v. Wren,* 43 Ill., 77; *Larrison v. Railroad,* 77
Ill., 11. We do not think that such proof as is sufficient to
impeach section 91 of the act has been introduced in this
case, if we exclude the entries on the original bill as incom-
petent, which we must do, as the provision of the Constitu-
tion is designed "not only to compel each member present
to assume as well as to feel his due share of responsibility
in legislation," but also to furnish "definite and conclusive
evidence whether the bill has been passed by the requisite
majority or not." Cooley on Stat. Lim., *supra.* Having con-
cluded that the Revenue Act, including section 91, is a valid

enactment, we must next inquire whether that section applies only to corporations organized under the laws of this State. It is provided in the section that "On each and every corporation organized under the laws of this State or doing business in this State, an annual franchise tax shall be assessed." The contention of the defendant's counsel is that the word "or" should be construed to mean "and," as it is further provided in the section that any corporation failing to pay the tax shall forfeit its charter, which provision could not apply to the defendant, as it is a non-resident, and that the tax shall be payable in the county "where it has its principal office, the defendant having its principal office outside the State, though its principal office in this State, where it has four offices, is in Wilmington. The object in the interpretation of all statutes is to ascertain the meaning and the intent of the Legislature, to the end that the intent may be enforced, and the construction must be according to the language employed if it is not ambiguous, as it must be presumed that such language has been used by the Legislature as fit and suitable to express its will correctly. Black Int. of Laws, 35. We cannot change words or insert one word for another unless it is necessary to do so in order to make that clear or intelligible which otherwise will be ambiguous or meaningless. We find no such necessity in this case. The Legislature, in our opinion, has said precisely what it meant and has expressed that meaning with sufficient clearness by its language to enable us to see and understand it without interfering with the phraseology or the form of expression which it chose to use in declaring its purpose. No good reason can be assigned why the Legislature should tax domestic corporations and not tax those of other States who seek to do business in this State and who thus come in competition with our home institutions. Such a course would seem to be clear discrimination against the latter and,

if lawful, would not be fair and just, and we would not impute such a motive to the Legislature without the use by it of language which would leave no other construction possible. We do not think the considerations urged as reasons why we should adopt plaintiff's interpretation of the section are sufficient to induce us to change the words of the statute so as to give it a meaning of which it is not now susceptible.

The third ground of objection to the tax is equally untenable. It is true that section 91 provides for an annual franchise tax, but this section is in Schedule C, and section 87 of the act, which is the first section of Schedule C, provides that taxes imposed by that schedule "shall be for the privilege of carrying on the business or doing the act named and shall be subject to the other regulations mentioned in section 35 under Schedule B." Turning to section 35, we find it to. be expressly provided that a tax may be imposed by the county, in addition to the State tax, upon the subjects of taxation mentioned in that section. It is provided by section 102 of the act (Schedule C), that when a specific license tax is levied for the privilege of carrying on any business, the county may levy the same tax, unless a provision to the contrary is made in the section levying the specific license tax. Schedule C provides for what is called license taxes to be paid by a designated class of corporations, such as railroads, banks, building and loan associations, insurance, telegraph, telephone and express companies, the amount of the tax being fixed at a certain per cent. on gross receipts or earnings, and on other corporations a tax is levied for carrying on their business, the assessment of which is graduated according to the capital stock paid in or subscribed and this is called a franchise tax, but it is nevertheless, by the very terms of section 87, a privilege or license tax. It is to be observed, in this connection, that sections

89 and 90, which provide for the tax on the first class of corporations we have mentioned, contain a clause exempting those corporations from a county tax, and the taxes imposed by those sections are paid directly to the State Treasurer. But section 91 contains no such clause of exemption so as to bring it within the operation of the proviso to section 102, and the tax by section 91 is required to be paid in the county where the corporation has its principal office, which would indicate that county as well as a State tax was contemplated. Upon a review of the several sections of the Revenue Act relating to this matter we are constrained to think that the defendant is liable for the taxes sought to be recovered in this action. But it is only liable under the act to the State and to the county where it has its principal office, if the latter has seen fit to impose the tax.

It must be certified that there is no error in the judgment of the Superior Court.

No Error.

DOUGLAS, J., concurs only in result.