C. P. FRAZIER v. BOARD OF COMMISSIONERS OF GUILFORD
COUNTY ET AL.

(Filed 10 June, 1927.)

**1. Constitutional Law—Schools—Taxation—Bonds—Vote of the People.**

Where a legislative enactment has been duly transmitted through the proper legislative channels to the President of the Senate and the Speaker of the House of Representatives, and is filed with the Secretary of State in accordance with the requirements of law, after their signatures have thereon been placed, the passage of the act in accordance with the provisions of Art. II, sec. 23, of the Constitution of North Carolina is irrebuttably presumed, except where it falls within the provisions of Art. II, sec. 14, thereof, the latter requiring that it be passed on separate days

4—194

with the aye and no vote, and then only the appropriate Journals of each branch of legislation may alone be shown in evidence to disprove that it was not so passed, and was therefore invalid.

**2. Same—Statutes—Ratification—Presumptions—County Finance Act.**

Where an act has been passed by the Legislature pledging the faith and credit of the State, or of a county, etc., in accordance with Art. II, sec. 14, of the State Constitution, after adopting amendments, with respect to which the Journals are silent to the manner of their adoption, the irrebuttable presumption is that the amendments were as to immaterial matters when the act itself has been ratified in accordance with our State Constitution, Art. II, sec. 23, and unofficial memoranda attached by a rubber band to the engrossed act and not therein referred to or therein incorporated, are incompetent as evidence *per contra*.

**3. Same—Notice—Newspapers—Sufficient Publication.**

The provisions as to notice given to taxpayers, etc., required by sec. 10, Municipal Finance Act, of an opportunity to be heard before the county may issue bonds for various purposes, is sufficiently complied with if the several orders of the county commissioners are published in the same advertisement and a date and place fixed for passing upon the objections made, if any, separately placed in the publication and distinctly referring to each of the separate purposes.

**4. Same—Counties—Agencies of Government.**

While the issuance of bonds for school purposes is not for a necessary expense within the contemplation of the Constitution, and ordinarily requires the submission of the question to the voters for the issuance of county bonds for the purchase of additional lands or equipment for established public schools, this is not required when the commissioners proceed under the County Finance Act, which empowers counties, as direct sub-agencies of the State Government, to provide public school facilities for the children of the State for a term not less than six months of each year. Const., Art. IX, sec. 2. Art. VII, sec. 7, does not apply.

**5. Same—Statutes—Length of School Term—Legislative Powers.**

Our State Constitution, having required a public school system of the State to have at least six months terms in each year, leaves it to the discretionary power of the Legislature to fix terms in excess of that period. Const., Art. IX, sec. 3.

CLARKSON, J., concurring.

APPEAL by plaintiff from *Oglesby, J.,* at May Term, 1927, of GUIL-FORD. Affirmed.

Controversy without action submitted to the Superior Court of Guilford County upon statement of facts agreed. C. S., 626.

The question in difference between the parties to this controversy involves the validity of bonds which defendant, board of commissioners of Guilford County, proposes to issue as obligations of said county, pursuant to orders made by said board, under the provisions of "The County Finance Act," ch. 81, Public Laws 1927.

Defendant has ordered that bonds of Guilford County be issued pursuant to said act, and unless restrained and enjoined from so doing, will issue bonds of said county as follows:

1. In an amount not exceeding $750,000 for the purpose of funding certain indebtedness of said county, incurred before 7 March, 1927, for the construction of roads and bridges in said county, and evidenced by notes of the county, now outstanding.

2. In an amount not exceeding $250,000 for the purpose of highway construction and reconstruction, including bridges and culverts.

3. In an amount not exceeding $500,000 for the purpose of erecting and equipping schoolhouses and additions to schoolhouses, and acquiring land therefor, when necessary, in accordance with resolutions adopted by the board of education of Guilford County, and approved by defendant, the board of commissioners of said county.

Defendant has further ordered, as required by the provisions of said County Finance Act, that taxes sufficient to pay the principal and interest of said bonds when due shall be annually levied and collected by said county.

Plaintiff, a resident and taxpayer of Guilford County, upon the facts agreed, contends first, that the County Finance Act, under which defendant proposes to issue said bonds, is void, for that said act was not passed by the General Assembly in accordance with the requirements of Article II, sec. 14, of the Constitution of North Carolina, in that the bill which was enacted as "The County Finance Act" was amended in each House of the General Assembly, and as amended did not receive three readings, on three different days in each House, with the yeas and nays on the second and third readings entered on its journal; second, that even if said act is valid, for that said amendments were not material, said bonds, if issued by defendant will be void, for that defendant has not complied with its provisions with respect to the publication of certain notices required by said act; and, third, that even if said act is valid, for the foregoing reason, the order for the issuance of bonds for the purpose of erecting and equipping schoolhouses, etc., is void, for that the erection and equipping of schoolhouses is not a necessary expense of Guilford County, within the meaning of Article VII, sec. 7, of the Constitution, and said order provides for the issuance of said bonds without the approval of a majority of the voters of Guilford County, as required by said section 7, Article VII of the Constitution.

From judgment denying the prayer of plaintiff that defendant be restrained and enjoined from issuing said bonds, plaintiff appealed to the Supreme Court, basing his assignments of error upon his exceptions to the judgment.

*Chester B. Masslich and Frazier & Frazier for plaintiff.*

*John N. Wilson, Attorney-General Brummitt and Assistant Attorney-General Nash for defendant.*

CONNOR, J. On 7 March, 1927, a bill entitled "An Act to Provide for the Issuance of Bonds and Notes of Counties, and for Property Taxation for the Payment Thereof, with Interest," was passed by the General Assembly of North Carolina, and enrolled for ratification under the supervision and direction of the Secretary of State, as required by statute, C. S., 6108. It was thereupon signed by the presiding officers of both Houses of the General Assembly in accordance with the provisions of Article II, sec. 23, of the Constitution. It was then sent to the office of the Secretary of State, who, as required by statute, filed and published the same as a law of the State of North Carolina, C. S., 7656, and C. S., 6111. It is now chapter 81, Public Laws of North Carolina, Session 1927, and in accordance with its provisions is known and cited as "The County Finance Act."

The signatures of the presiding officers of both Houses of the General Assembly, affixed to said bill, certifying that same was duly ratified in each House, is conclusive, not only of its ratification, but also of its passage by the General Assembly of North Carolina, in accordance with the provisions of Article II, sec. 23, of the Constitution of North Carolina, *i. e.*, that the bill which was enacted as chapter 81, Public Laws 1927, was read three times in each House and duly passed and ratified by both Houses.

In *Cotton Mills v. Waxhaw,* 130 N. C., 293, it is said: "This Court has repeatedly held that the ratification of an act by the presiding officers of the two Houses of the General Assembly, declaring it to have been read three times in each House, is conclusive of such fact. *Carr v. Coke,* 116 N. C., 223, 28 L. R. A., 737, 47 Am. St. Rep., 801; *Bank v. Comrs.,* 119 N. C., 214; *Comrs. v. Snugg,* 121 N. C., 394, 39 L. R. A., 439; *Comrs. v. DeRosset,* 129 N. C., 275; *Black v. Comrs.,* 129 N. C., 121." No evidence other than the signatures of the presiding officers of both Houses of the General Assembly is required or competent to show that a bill, signed by them was passed as required by Article II, sec. 23, of the Constitution; not even the Journal, which each House is required by the Constitution to keep of its proceedings (Art. II, sec. 16), is competent to show the passage by the General Assembly of a bill introduced in either House, and its enactment as a law, in the absence of the certificate signed by the presiding officers of the two Houses, *Scarborough v. Robinson,* 81 N. C., 409; nor is the Journal of either House competent to contradict the certificate of the presiding officers that a bill was duly read in each House three times, passed on each reading,

and thereafter duly ratified by both Houses.  *Carr v. Coke,* 116 N. C., 233.  Both *Scarborough v. Robinson* and *Carr v. Coke* are cited and approved in *Wilson v. Markley,* 133 N. C., 616, where it is said, for a unanimous Court: "These authorities would seem to establish the law in this State, that the Court has no power to examine the Journals, and they are not competent to be received in evidence to show the passage of an act or to contradict the certificate of the presiding officers that an act had been duly read three times and passed each House of the General Assembly."  In *Brodnax v. Groom,* 64 N. C., 245, this Court, in the opinion written by *Chief Justice Pearson,* said: "We are of the opinion that the ratification certified by the Lieutenant-Governor and the Speaker of the House of Representatives makes it a 'matter of record,' which cannot be impeached before the courts in a collateral way.  *Lord Coke* says: 'A record, until reversed, importeth verity.'"  In *Comrs. v. Snugg,* 121 N. C., 394, *Montgomery, J.,* says: "The certificate of these officers will be taken as conclusive of the several readings in ordinary legislation, even if it could be made to appear that the Journals were silent with reference thereto, because in ordinary legislation the directions of the Constitution are not a condition precedent to the validity of the act."  See *Brown v. Stewart,* 134 N. C., 358, where the writer of the opinion for the Court says: "The Court has held in *Bank v. Comrs.,* 119 N. C., 214, and several recent cases, that the Journal is competent evidence to show whether the provisions of section 14, Article II, of the Constitution, have been complied with.  The writer of this opinion thinks it not improper to say, speaking for himself, that unless compelled by overwhelming and controlling authority, he would hold that the principle announced in *Brodnax v. Groom,* 64 N. C., 244, is to be rigidly adhered to, save in the clearly defined exception made in *Bank v. Comrs.,* 119 N. C., 214."

The principle upon which the law in this State, with respect to the authentication of statutes enacted by the General Assembly as ordinary legislation, declared in the foregoing and other authoritative decisions of this Court, is founded, is recognized and applied by courts of other jurisdictions.  In *Atlantic Coast Line Railroad Co. v. State of Georgia,* 135 Ga., 545, 69 S. E., 725, 32 L. R. A. (N. S.), 20, the Supreme Court of Georgia has held that "where an enrolled bill is signed by the presiding officers of both Houses, approved by the Governor, and deposited in the office of the Secretary of State, it will be conclusively presumed that the measure was properly put to a vote in both Houses, and that it received a constitutional majority; and the Court will not upset the act because the Journals of the Houses happen to show that it did not receive a majority of the votes of either or both branches of the Legislature."  The law was thus declared, notwithstanding a provision in the Constitu-

tion of Georgia in words as follows: "No bill shall become a law unless it shall receive a majority of the votes of all the members elected to each House of the General Assembly, and it shall, in every instance, so appear on the Journal."

In 25 R. C. L., at page 895, it is said that in England it has been uniformly held that the enrolled bill is conclusive, and that the courts cannot go beyond it to the Journals or to the original draft, for the purpose of examining the contents or the passage of a law. In the United States, according to one line of cases, the enrolled bill imports absolute verity, and the courts will not look beyond it to the legislative Journals or other evidence to ascertain the terms of the statute, or whether it has been regularly enacted. "This is the rule which is usually adopted when the question is one of first impression, and it has sometimes been adopted even when it has been necessary to overrule earlier cases, holding that the Court may resort to the legislative Journal to determine whether a statute has been regularly enacted, while the courts of some of the states, although constrained by prior decisions to adhere to the Journal entry rule, have permitted themselves to question its wisdom."

On page 898 of 25 R. C. L., it is said to be the law everywhere, even in jurisdictions in which the enrolled copy of an act does not import absolute verity, that every enrolled act, regular on its face, and found in the custody of the proper officer, is presumed to have been regularly enacted, and is prima facie evidence of the law. But in some jurisdictions, while the enrolled act is prima facie evidence of the regular enactment of the law, the courts may have recourse to the Journals of either House of the Legislature for the purpose of ascertaining whether the law has, in fact, been passed in accordance with constitutional requirements. Numerous decisions are cited in the notes in support of the text.

This Court has held, uniformly, the law in this State to be that the certificate of the presiding officers of the two Houses of the General Assembly, while conclusive that a bill signed by them was passed by the General Assembly, in compliance with the provisions of Article II, sec. 23, of the Constitution, is not sufficient to show that a bill to which Article II, sec. 14, was applicable was passed in accordance with its requirements. These requirements are mandatory upon the General Assembly. It has also been held that it is competent for the courts, when the validity of an act, although signed by the presiding officers of both Houses of the General Assembly, is challenged on the ground that it was not passed in accordance with the provisions of Article II, sec. 14, to examine the Journals of both Houses to ascertain whether these requirements were complied with. The Journals are the evidence provided by the Constitution from which the Court may ascertain whether

or not the law was enacted by the General Assembly as required by its provisions. No other evidence is required, or competent. The exception to the general rule that the certificate of the presiding officers is conclusive is made because of the express provision of Article II, sec. 14, with respect to laws to which said provisions are applicable.

In *Bank v. Comrs.*, 119 N. C., 214, the decision of the Court in *Carr v. Coke*, 116 N. C., 223, is cited and approved. It is said, however, in the opinion of *Clark, J.*: "That case merely holds that when an act is certified to by the Speakers as having been ratified, it is conclusive of the fact that it was read three several times in each House and ratified. Const., Art. II, sec. 23. And so it is here; the certificate of the Speakers is conclusive that the act passed three several readings in each House, and was ratified. The certificate goes no further. It does not certify that this act was read three several days in each House, and that the yeas and nays were entered on the Journal. The Journals were in evidence, and showed affirmatively the contrary."

This Court, when called upon to determine the validity of an act of the General Assembly, enacted "to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities, or towns to do so," has uniformly received the Journals in evidence to show whether or not the bill for such purpose was passed in accordance with the mandatory provisions of Article II, sec. 14. Where the Journals of both Houses of the General Assembly have shown that the bill was passed in compliance with the requirements of Article II, sec. 14, an act authorizing the issuance of bonds or the imposition of taxes has been held valid by this Court; but when the Journal of either House has shown that the bill was passed without such compliance, or fails to show affirmatively that it was passed as required thereby, the act has been held void in so far as by its terms it authorized the issuance of bonds or the imposition of taxes. The Journals are conclusive as to whether or not the bill was passed as required by Article II, sec. 14. No evidence, other than the Journals, is required by the Constitution; nor will the courts receive or consider any other evidence than the Journals, when called upon to determine whether or not a law to which Article II, sec. 14, is applicable was passed in accordance with its requirements.

The Journals of both Houses of the General Assembly, Session 1927, show that the bill which was enacted as "The County Finance Act" was passed in compliance with the provisions of Article II, sec. 14. They further show, however, that said bill was amended in each House; they do not show that the bill, after the adoption of the amendments was read over again three times in each House, with the yea and nay vote on

the second and third readings entered on the Journals. Nor does the Journal of either House show the purpose or effect of the several amendments which were adopted, and thereafter included in said bill as the same was passed and ratified. In the absence of any showing by the Journals that the amendments, or any one of them, were material (*Gregg v. Comrs.,* 162 N. C., 480; *Bank v. Lacy,* 151 N. C., 3; *Comrs. v. Packing Co.,* 135 N. C., 62; *Brown v. Stewart,* 134 N. C., 357; *Glenn v. Wray,* 126 N. C., 730), the validity of the act cannot be successfully called in question, because the bill, as amended, was not again read three times in each House, with the yea and nay vote on the amended bill entered on the Journals. It is only when the bill has been amended in a material matter that it is required that the amended bill shall be read over again three times in each House, with the yeas and nays on the second and third readings entered on the Journal. It is so held in *Glenn v. Wray,* 126 N. C., 730. For the law with respect to the passage of a substitute for the original bill, see *Brown v. Comrs.,* 173 N. C., 598, and *Edwards v. Comrs.,* 183 N. C., 58.

Where the Journal of either House of the General Assembly shows only that a bill which must be passed in accordance with the provisions of Article II, sec. 14, in order to be valid as a law, was amended, and does not show the purpose or effect of the amendment, there is no presumption that the amendment was material; on the contrary, there is a presumption that the amendment was immaterial, as affecting the passage of the bill by the General Assembly. The only competent evidence to overcome this presumption is the Journal itself. In the absence of any evidence to be found in the Journal of either House as to the contents of an amendment, adopted and included in a bill to authorize the issuance of bonds or the levying of a tax, it must be taken as a fact that the amendment was immaterial in so far as the passage of the bill and its enactment as law is concerned.

In *Comrs. v. Packing Co.,* 135 N. C., 62, it is held that "the burden is always on the party who alleges that a statute was not passed according to the constitutional requirements, and he must furnish the competent evidence necessary to overcome the presumption arising from the ratification of the act." In that case, it was held that entries on the original bill were incompetent as evidence to show the passage of an amended bill. The Court declined to consider those entries as evidence, saying with respect thereto: "The Constitution requires that it should appear, not from the entries on the original bill, but from the Journal, that the bill was properly read and the necessary entry of ayes and noes was made. If the journal shows that the bill was properly passed, no evidence will be received to contradict what is therein recorded. The law requires the Journals of the General Assembly to be deposited with the

Secretary of State, and these Journals, or a copy of them, certified as provided by law, are the only evidence that can be resorted to in order to overcome the presumption arising from the ratification of the act and to invalidate it. It can be done in this way, but in no other." This statement of the law is well supported by the authorities cited, and is now reaffirmed.

It is agreed by the parties to this controversy that "a diligent search has been made to ascertain what were the four amendments said by the Senate Journal to have been offered by Senators Sharp, Hancock, Moore, and Woodson, respectively, and adopted by the Senate on 25 February, 1927. The Senate Journal does not contain any one of said amendments, nor give any clue as to what its tenor or effect may be, nor as to its materiality or immateriality. All that the most diligent search has succeeded in finding are four slips of paper, true copies of which have been transcribed on one page and attached to and made a part of this agreed case, as Exhibit 'H.' At the foot of each of said four slips of paper are stamped the words, 'Adopted 25 February, 1927,' followed by the signature of one Martin, then the principal clerk of the Senate.

"Said slips of paper are in the custody of Hon. W. N. Everett, Secretary of State of North Carolina, who, after the adjournment of the regular session of the General Assembly in 1927, took the same from a drawer in a desk in an ante-room of the Senate chamber with the consent of one Corey, who during said session had been the engrossing clerk of the Senate, and then had said slips of paper in his custody, and had attached the same by a rubber band to the cover of the original bill at the time the bill was engrossed.

"Diligent search has been made for the amendment or amendments referred to in the House Journal as having been made on the third reading in the House of Representatives. The House Journal does not contain any one of said amendments, nor give any clue as to what its tenor or effect may be, nor as to its materiality or immateriality. All that the most diligent search has succeeded in finding is a slip of paper, a true copy of which is attached to and made a part of this agreed case, as Exhibit 'I.' This slip of paper is attached to what purports to be the engrossed bill hereinabove referred to, and is in the custody of Hon. W. N. Everett, Secretary of the State of North Carolina. At the foot of the slip of paper are stamped the words, 'Adopted 4 March, 1927,' but the stamped portion is not signed or otherwise authenticated."

It is manifest that under the authority of *Comrs. v. Packing Co.,* *supra,* these slips of paper cannot be considered by the Court as evidence showing in what respect the bill which was enacted as "The County Finance Act" was amended, either in the Senate or in the House of Representatives, for the purpose of determining whether the amend-

ments shown by the Journal to have been adopted were material or immaterial. To permit evidence of this character to be received and considered by the courts in order to sustain an attack upon the validity of an act of the General Assembly would destroy the integrity of the laws of this State, and leave its citizens, and others who rely upon statutes duly enacted by the General Assembly, in hopeless uncertainty and confusion. We find no authoritative decisions of this Court which require us to sustain the contention of plaintiff that these slips of paper are competent evidence to show in what respect the bill was amended, either in the Senate or House of Representatives. The fact that this Court has considered certain amendments, which in some instances it was agreed, and in others it was found by the judge, without objection, were adopted by the Senate or House of Representatives, when the bill was pending on its passage by the General Assembly, for the purpose of determining their materiality, does not justify the contention that *Comrs. v. Packing Co., supra,* has been ignored by this Court or repudiated as an authority upon the question now under consideration.

Plaintiff's first contention with respect to the validity of the bonds which defendant proposes to issue cannot be sustained. Chapter 81, Public Laws 1927, was enacted by the General Assembly in compliance with all pertinent constitutional requirements, as shown by the certificate of the presiding officers of both Houses of the General Assembly, and by their Journals. In the absence of evidence contained in the Journals to the contrary, we must hold that amendments, shown to have been adopted, while the bill was on its passage, were immaterial, as affecting the passage of the bill, and its enactment as a law for the purposes set out in Article II, sec. 14. Bonds issued in accordance with the provisions of said law will be valid; taxes levied to pay the principal and interest of said bonds will be lawful, and when collected, will be applicable to the payment of said bonds and interest, as provided in the law.

It does not follow as a necessary consequence of the decision in this case that the law as heretofore declared by this Court in *Glenn v. Wray, supra,* with respect to the passage of a bill to provide for the issuance of bonds, or the imposition of a tax, is modified or abrogated. The decision in this case is not inconsistent with the principle declared in *Glenn v. Wray, supra,* and applied in subsequent cases. We are here dealing only with the question as to what evidence is competent to show whether or not an amendment, shown by the Journals to have been adopted, is material, as affecting the passage of the bill as amended. We hold that the Journals only are competent as such evidence. There is no requirement in the Constitution that an amendment shall be entered upon the Journal. It is competent, however, for any member

of either House to have an amendment to a bill pending therein entered on the Journal.   Const., Art. II, sec. 17.   Either House may order an amendment to be so entered.   No evidence, other than the Journal of that branch of the General Assembly by which an amendment was adopted, is competent to show the purpose or effect of the amendment, upon a contention involving its materiality as affecting the passage of the bill.

With respect to plaintiff's second contention in support of his prayer that defendant be restrained and enjoined from proceeding further in the matter of the issuance of said bonds, it is agreed that the clerk of defendant board of commissioners of Guilford County caused to be published copies of the three orders for the issuance of said bonds, as same were introduced at a regular meeting of defendant board on 5 April, 1927.   He did not cause to be published in connection with each of said orders the statement required to be published by section 16 of the County Finance Act.   The three orders were, however, published contemporaneously in the same newspaper, and appeared on the same page of said newspaper.   Immediately below his certificate authorizing such proceedings, the said clerk caused to be published the statement so required.   This statement, by its express terms, referred to each and all said orders.   Notice was thereby given to all citizens and taxpayers that protests against the issuance of said bonds might be made at a meeting of defendant board to be held on a day and at an hour fixed by said board and stated in said notice.

It is further agreed that after the final passage by defendant board of all three of said orders, at a meeting held on 19 April, 1927, its clerk caused each of said orders, together with the notice required by section 19 of the County Finance Act, to be published.

Plaintiff contends that the publication of the orders introduced at the meeting of defendant board of commissioners was defective in that its clerk failed to publish in connection with each order the statement required by section 16 of the County Finance Act.   The publication of one statement in connection with all three orders, upon the facts agreed, was sufficient as a compliance with said section.   Plaintiff's second contention is not sustained.   The proper publication of the notices required by the County Finance Act is mandatory, and cannot be dispensed with; we hold, however, that upon the facts agreed in the instant case, there was a proper publication, and a full compliance with the requirements of the act.

Plaintiff, by his third contention, presents for decision the question as to whether defendant board of commissioners of Guilford County may issue bonds of said county for the purpose of erecting and equipping

schoolhouses therein, under the provisions of the County Finance Act, without the approval of the majority of the qualified voters of said county.

Section 9 of the County Finance Act provides that the order for the issuance of bonds thereunder shall contain a clause stating the conditions upon which the order will become effective, and that said order shall become effective in accordance with such clause, which clause shall be as follows:

"1. If the bonds are funding or refunding bonds, that the order shall take effect upon its passage, and shall not be submitted to the voters; or

"2. If the bonds are for a purpose other than the payment of necessary expenses, or if the governing body, although not required to obtain the assent of the voters before issuing the bonds, deems it advisable to obtain such assent, that the order shall take effect when approved by the voters of the county at an election, as provided in the act; or

"3. In any other case, that the order shall take effect thirty days after the first publication thereof after final passage, unless in the meantime a petition for its submission to the voters is filed under the act, and that in such event, it shall take effect when approved by the voters of the county at an election, as provided in the act."

Section 22 of said act is as follows: "If a bond order provides for the issuance of bonds for a purpose other than the payment of necessary expenses of the county, the approval of the qualified voters of the county, as required by the Constitution of North Carolina, shall be necessary in order to make the order operative. If, however, the bonds are to be issued for necessary expenses, the affirmative vote of the majority of the voters voting on the bond order shall be sufficient to make it operative in all cases when the order is required by this act to be submitted to the voters."

In the instant case, defendant has provided in the order for the issuance of bonds for erecting and equipping schoolhouses in designated school districts in Guilford County, established in accordance with the provisions of Article IX, sec. 3, of the Constitution, that same "shall take effect thirty days after the first publication hereof, after final passage, unless in the meantime a petition for its submission to the voters is filed under said act, and that in such event it shall take effect when approved by the voters of the county at an election, as provided in said act."

No citizen or taxpayer of Guilford County filed a protest against the issuance of any of the said bonds, nor was any petition filed for a referendum on the order for the issuance of bonds for the purpose of erecting and equipping said schoolhouses. By its terms, therefore, the order became effective without submission to the voters of Guilford County.

The validity of the bonds to be issued by defendant pursuant to said order is challenged by plaintiff on the ground that said bonds are for a purpose other than the payment of necessary expenses of Guilford County, and not having been approved by the majority of the qualified voters of said county, the said bonds will be void, and taxes levied for the payment of the principal and interest of same will be unlawful. Const. of N. C., Art. VII, sec. 7.

It is well settled by authoritative decisions of this Court that the establishment or maintenance of schools is not a necessary expense of a county, city, town, or other municipal corporation, within the meaning of Article VII, sec. 7, of the Constitution of this State, and that no bonds may be issued or taxes levied by a county, city, town, or other municipal corporation for such purpose without the approval of the majority of the qualified voters therein, in accordance with the provisions of said section and article. It has been so held in *Stephens v. Charlotte,* 172 N. C., 564; *Sprague v. Comrs.,* 165 N. C., 603; *Gastonia v. Bank,* 165 N. C., 507; *Ellis v. Trustees,* 156 N. C., 10; *Hollowell v. Borden,* 148 N. C., 255; *Rodman v. Washington,* 122 N. C., 39; *Goldsboro Graded School v. Broadhurst,* 109 N. C., 228; *Lane v. Stanly,* 65 N. C., 153. There is no provision in the Constitution making it the duty of counties, cities, towns, or other municipal corporations to establish or to maintain schools. They may do so only when authorized by special acts of the General Assembly. Schools established and maintained by a county, city, town, or other municipal corporation under a special act of the General Assembly are not necessarily included within the State system of public schools. It has, therefore, been uniformly and consistently held by this Court that Article VII, sec. 7, of the Constitution is applicable to bonds issued and taxes levied by a county, city, town, or other municipal corporation for this purpose. Bonds issued or taxes levied by such municipal corporations to establish or maintain schools, without the approval of the majority of the qualified voters therein, are invalid and unlawful, because of the provisions of Article VII, sec. 7.

These decisions, however, are not determinative of the question here presented for decision. The Constitution of North Carolina does provide—and its provisions in that respect have been held mandatory—that the General Assembly shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one, Article IX, sec. 2; and that to accomplish this end, the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year, Article IX, sec. 3. It cannot be too often emphasized that the

controlling purpose of the people of North Carolina, as declared in their Constitution, is that a State system of public schools shall be established and maintained—a system of schools supported by the State, and providing for the education of the children of the State—and that ample power has been conferred upon the General Assembly to make this purpose effective. In *Tate v. Board of Education,* 192 N. C., 516, this Court has said: "It is, however, fully within the power of the General Assembly, because of the duty imposed upon it by the Constitution, 'to provide by taxation and otherwise for a general and uniform system of public schools,' to authorize and direct the respective counties of the State, as administrative units of the public school system, or as governmental agencies employed for that purpose by the General Assembly, to provide the money for such expense by taxation and otherwise, *Lovelace v. Pratt,* 187 N. C., 686; *Lacy v. Bank,* 183 N. C., 373."

Section 8 of the County Finance Act is in these words: "The special approval of the General Assembly is hereby given to the issuance by counties of bonds and notes for the special purposes named in this section, and to the levy of property taxes for the payment of such bonds and notes, and interest thereon. Accordingly, authority is hereby given to all counties in the State, under the terms and conditions herein described, to issue bonds and notes and to levy property taxes for the payment of the same, with interest thereon, for the following purposes, including therein purchase of the necessary land, and, in case of buildings, the necessary equipment: (a) Erection and purchase of schoolhouses."

The counties of the State are authorized by this statute to issue bonds and notes for the erection of schoolhouses and for the purchase of land necessary for school purposes, and to levy taxes for the payment of the same, principal and interest, not as municipal corporations, organized primarily for purposes of local government, but as administrative agencies of the State, employed by the General Assembly to discharge the duty imposed upon it by the Constitution to provide a State system of public schools. The limitations of Article VII, sec. 7, are not applicable to bonds or notes issued by a county, as an administrative agency of the State, under authority conferred by the County Finance Act, for the purpose of erecting schoolhouses, and equipping same, or purchasing land necessary for school purposes. We therefore hold that the board of commissioners of any county in the State, upon compliance with the provisions of the County Finance Act, has authority and is empowered to issue bonds or notes of the county for the purpose of erecting and equipping schoolhouses, and purchasing land necessary for school purposes, and to levy taxes for the payment of said bonds or notes, with interest on the same, without submitting the question as to whether said

bonds or notes shall be issued or said taxes levied, in the first instance, to the voters of the county, where such schoolhouses are required for the establishment or maintenance of the State system of public schools in accordance with the provisions of the Constitution. The board of commissioners is required to submit the question as to the issuance of said bonds or notes to the voters only upon a petition for a referendum, in accordance with the provisions of the act.

The mandatory provision of section 3 of Article IX, to the effect that "one or more public schools shall be maintained at least six months in every year" in each school district of the State, wherein tuition shall be free of charge to children of the State between the ages of six and twenty-one, is not a limitation as to the length of the school term; it is the minimum required by the Constitution. The General Assembly has the power to provide for a longer term for the public schools of the State. Whether the term shall exceed the minimum fixed by the Constitution must be determined from time to time by the General Assembly, in accordance with its judgment, and in response to the wishes of the people of the State. There is no provision in the County Finance Act by which the amount for which bonds or notes may be issued for the purpose of erecting schoolhouses, or purchasing land necessary for school purposes is limited to the amount required for maintaining in the several districts into which the State is divided one or more schools for a term not exceeding six months in each year. Whether such limitation should have been imposed was a matter for the General Assembly. Its absence does not affect the validity of the bonds or notes that may be issued, or of the taxes that may be levied in accordance with the provisions of said act.

We find no error in the judgment denying the prayer of plaintiff that defendant herein be restrained and enjoined from issuing the bonds which defendant proposes to issue, or levying the taxes which defendant proposes to levy. The judgment is

Affirmed.

CLARKSON, J., concurring: I heartily concur in the able and constructive opinion of the Court, written by *Mr. Justice Connor.* In the first place, it gives confidence to those persons and corporations that have or will hereafter invest their money in securities of this State, or its agencies. In the second place, it recognizes that the General Assembly, composed of the representatives of the people, and responsible to them, in its wisdom and sound judgment, may gradually and sanely enact legislation looking to a vision when equal educational advantages will be provided for all the children of this commonwealth, both urban and rural.